James R. **CARTER**, d/b/a Carter Construction, Plaintiff–Appellee

v.

Sylvia L. **KRUEGER**, M.D., Defendant–Appellant.

Court of Appeals of Tennessee, Eastern Section.

Sept. 29, 1995.

Permission to Appeal Denied by Supreme Court Feb. 5, 1996.

Selma Cash Paty, Chattanooga, for Appellant.

Lynn Perry, Cleveland, for Appellee.

*OPINION*

McMURRAY, Judge.

This is an action arising from a suit to enforce a materialman's and laborer's lien against a building belonging to the appellant. The appellant insists that the appellee breached his contract with her and that he, therefore, is not entitled to enforce a lien. Additionally, appellant filed a counter-complaint seeking damages for breach of contract. The trial court, after a bench trial, entered judgment in favor of the appellee. This appeal resulted.

The defendant-appellant, Sylvia L. Krueger, M.D., is a medical doctor practicing her profession in Cleveland. Her professional practice offices are located in a building owned by her. The plaintiff-appellee is a building contractor also practicing his profession in the Cleveland area. The parties apparently have been acquaintances for some time. The appellee had previously constructed an addition to the appellant's professional office building.

In the case at hand, the parties entered into an oral agreement whereby the appellee was to construct a new addition to the appellant's building of some 3400 to 3500 additional square feet. The appellant presented to the appellee a simple sketch of the floor plan of the addition. The appellant hired an engineer to redraw the plan in such a fashion

that it could be used to obtain a building permit. Other than the sketch of the floor plan there was no other written documentation relating to the addition. There were no specifications agreed upon.

By subsequent agreement the parties increased the finished area of the building to 6700 square feet by finishing the attic space and basement.[1] Appellee asserts that he was to be paid fifty dollars ($50.00) per square foot for the construction based upon finished area. There appears to be no real dispute that $50.00 was the agreed upon price. The appellant, although verbose in her explanation of the costs for the project, does admit that the agreed upon price was $50.00 per square foot. In her testimony, the appellant was asked the following questions and gave the following answers:

Q. ... You entered into a contract and agreement with Mr. Carter to construct this addition to your building; is that correct?

A. That's correct.

Q. And the price was agreed to at $50.00 per square foot of finished space; is that correct?

A. That was the price we agreed to later on, not originally, no.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. You stated in your deposition that the price was $50.00 per square foot.

A. That's what Richard [the appellee] told me, but it was really on this one meeting that day, as I remember, that he gave me the total figure because originally as we said, the floor plan was for 3500 square feet.

The appellant moved into the new addition before a certificate of occupancy had been issued by the City of Cleveland. After his inspection the city building inspector presented the appellee with a punch list of items to be completed before a certificate would be issued. In due course, the items were corrected and a certificate of occupancy was issued.

The appellee, Mr. Carter, acknowledged that there was some $2,000.00 of work that had not been completed and that some of the work that had been done was improperly done. He complains primarily that he was not allowed to correct the problems or deficiencies; that the appellant removed him from the job and that she [the appellant] began paying the appellee's subcontractors directly; that she hired an architect and professional engineer to inspect the new premises and report any problems they found to her; and subsequently, she hired another contractor, ISI General Contractor, to make the repairs deemed necessary by the architect and engineer to complete the project. She claims to have expended $41,790.58 in payment to the appellee's subcontractors and $127,420.00 in repair costs to the substitute contractor. (Payments to the architect and engineer resulted in a total cost of $134,217.78).

The trial court entered a judgment against the appellant in the amount of $70,000.00. He ordered "that plaintiff, James R. Carter, shall have a valid and enforceable lien and a judgment against the defendant, Sylvia L. Krueger, M.D., after giving defendant all credits and offsets for her counter-complaint...."

From this judgment the appellant appeals to this court and asks us to review the following issue:

The trial judge erred in failing to award judgment to the appellant for $77,508.00 on her counter-claim and erred in awarding judgment against appellant in favor of appellee for $70,000.00 when the appellee breached his contract with appellant.

Firstly, we note that the appellant's issue is argumentative in that it asserts as a fact that the appellee breached his contract with the appellant. This is a matter of fact which

1. The chancellor in his memorandum opinion, stated the new addition to be 6500 square feet and calculated damages using that figure. No issue is made of this finding.

is properly addressed to the trier of fact. We, therefore, will consider the issue as a challenge to the preponderance of the evidence.

The appellee also asserts two issues for our consideration. The first is basically a restatement of the issue raised by the appellant. The second issue raised by the appellee is whether it was error for the trial court to allow a $52,000.00 credit to the appellant in computation of the amount of the judgment. Again, we observe that these issues are nothing more than a challenge to the preponderance of the evidence.

■ We enter upon our review mindful of our duty pursuant to Rule 13(d), Tennessee Rules of Appellate Procedure. "Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." In a *de novo* review, the parties are entitled to a reexamination of the whole matter of law and fact and this court should render the judgment warranted by the law and evidence. *Thornburg v. Chase,* 606 S.W.2d 672 (Tenn. App.1980); *American Buildings Co. v. White,* 640 S.W.2d 569 (Tenn.App.1982); Tennessee Rules of Appellate Procedure, Rule 36. We note that no such presumption attaches to conclusions of law. *See Adams v. Dean Roofing Co.,* 715 S.W.2d 341, 343 (Tenn.App.1986).

### BREACH OF CONTRACT

■ In this case, the material facts leading up to the cessation of work by the appellee are basically undisputed. It is clear from the record that the appellant failed to give notice to the appellee of the deficiencies in the structure and offer him an opportunity to correct any substantial and material defects falling below the standard of workmanship prevailing in the area. We are of the opinion

that, in the absence of express plans and specifications, the standard of workmanship prevailing in the area coupled with conformity to the applicable codes adopted by the City of Cleveland is the standard by which the appellee's performance is to be tested.[2] The findings of the architect, engineer and new contractor are immaterial unless it is shown that the conditions found to be defective by them fell below the applicable standard.

■ The appellee relies heavily upon the case of *McClain v. Kimbrough Construction Company,* 806 S.W.2d 194 (Tenn.App.1990). In *McClain,* the court held that Kimbrough [the contractor] was under a duty to give McClain [subcontractor] notice and a reasonable opportunity to correct its defective work before terminating the contract. The appellant argues that *McClain* has no application to this case because *McClain* was a case involving a contractor and a subcontractor. We do not perceive this to be a material distinction. In *McClain* it is said:

Requiring notice is a sound rule designed to allow the defaulting party to repair the defective work, to reduce the damages, to avoid additional defective performance, and to promote the informal settlement of disputes. *Pollard v. Saxe & Yolles Dev. Co.,* 12 Cal.3d 374, 525 P.2d 88, 92, 115 Cal.Rptr. 648, 652 (1974); *Sturdy Concrete Corp. v. Nab Constr. Corp.,* 65 A.D.2d 262, 411 N.Y.S.2d 637, 644 (1978). Thus, even when the parties have not included a "take over" clause in their contract, courts have imposed upon contractors the duty to give subcontractors notice and an opportunity to cure before terminating the contract for faulty performance. *United States ex rel. Cortolano & Barone, Inc. v. Morano Constr. Corp.,* 724 F.Supp. 88, 98 (S.D.N.Y.1989); *see also Cyclo Floor Machine Corp. v. National Housewares, Inc.,* 296 F.Supp. 665, 682 (D.Utah 1968) (imposing a notice requirement in a non-construction context).

*McClain* at page 198.

In *McClain,* it is also said that "contracting parties should endeavor to define their

2. The City of Cleveland has adopted the Standard Building Code (SBCII), the North Carolina Handicap Code and the National Electrical Code.

respective rights and obligations precisely." Citing *V.L. Nicholson Co. v. Transcon Inv., Fin. Ltd.,* 595 S.W.2d 474, 482 (Tenn.1980) and *Forest, Inc. v. Guaranty Mortgage Co.,* 534 S.W.2d 853, 857 (Tenn.Ct.App.1975). We can conceive of no case or circumstance where the advice imparted by *McClain* would have been more apropos.

We concur with the chancellor's conclusion that the appellant was in material breach of the contract by failure to give notice of the claimed defects and afford the appellee a reasonable opportunity to cure the defects.

## DAMAGES

The appellee admitted that there were structural defects in the new addition to the building.

The court found the appellee's performance to be wanting but expressed his sentiments that both parties should share some of the blame. Thus, in determining damages, he began with the contract price of $325,000.000 [6500 × $50] and deducted $181,000.00 [amount testified to by appellant—181,500.00] which had been paid to the appellee by the appellant before the difficulties between the parties arose. He likewise deducted the sum of $41,000.00 [amount expended according to the evidence—$41,790.58] which the appellant had paid to the appellee's subcontractors. He reasoned that Dr. Krueger, the appellant, had paid out $352,000.00 on a structure which was to have cost $325,000.00. He further reasoned that the appellee, Mr. Carter had received $222,000.00 under a contract under which he should have received $325,000.00 had the work been properly performed. His conclusion was that there was a net difference of $131,000.00 [352,000.00—222,000.00] separating the amount paid by the appellant and the amount of the initial contract. From this amount, he deducted $52,000.00 for faulty workmanship or construction and granted

the appellee a judgment for the remainder of $70,000.00.[3]

The appellant's business manager testified that she had paid $127,420.00 to ISI General Contractor to repair the alleged defects and an additional sum to the architects and engineers for a total expenditure of $134,217.78. There was no proof tendered by the appellee as to his estimation of expenses he would have incurred in repairing that part of the construction which was below standards.

■ While we can see the equities of the trial court's judgment, we are of the opinion that the proper measure of damages was not applied. The proper measure of damages is *the net profits that would have been made had the contractor been permitted to complete the contract. See McClain,* at page 200.

The appellant relies upon *John P. Saad & Sons, Inc., v. Nashville Thermal Transfer Corp.,* 715 S.W.2d 41 (Tenn.1986), wherein it is said:

"[T]here can be no recovery for damages on the theory of breach of contract by the party who himself breached the contract." *Santa Barbara Capital Corp. v. World Christian Radio Foundation, Inc.,* 491 S.W.2d 852, 857 (Tenn.App.1972), cert. denied (Tenn.1973).

■ The principle enunciated in *Saad* is cited with approval in *McClain:*

A party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract. *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.,* 715 S.W.2d 41, 47 (Tenn. 1986); *Cummins v. McCoy,* 22 Tenn.App. 681, 691, 125 S.W.2d 509, 515 (1938). Thus, in cases where both parties have not fully performed, it is necessary for the courts to determine which party is chargeable with the first *uncured material*

---

**3.** We presume that in making these calculations, the trial judge used rounded numbers instead of the exact amounts testified to at trial. In any event, we are of the opinion that the trial judge intended to grant a judgment to the appellee for $70,000.00 since that is the only amount reflected in the final judgment.

*breach.* See Restatement (Second) of Contracts § 237 comment b (1979). (Emphasis added).

Without question, the first breach was attributable to the appellee in that he failed to construct the addition to the appellant's building in accordance with the standards imposed upon him. We cannot say, however, that his breach was an "uncured material breach" because he was never given proper notice of the claimed defects or an opportunity to "cure" the breach.

In the construction context, we have imposed upon contractors the obligation to give their subcontractors a reasonable opportunity to perform. *Foster & Creighton Co. v. Wilson Contracting Co.,* 579 S.W.2d 422, 425–26 (Tenn.Ct.App.1978). . . .

*McClain,* at page 198.

■ We are of the opinion and hold that the appellee is not barred from recovering damages even though he may have been the first to breach the contract between the parties because the appellant failed to give notice of claimed defects and failed to give the appellee an opportunity to cure the defects. Further, the appellant interfered with the contracts between the appellee and his subcontractors by paying them directly, thus depriving the appellee of any substantial leverage to negotiate a settlement with the subcontractors in the event any of the claimed defects were caused or contributed to by the subcontractors.

We are unable to calculate "lost net profits" from the record as it now stands. We, therefore, vacate the damage award and remand the case to the trial court for a recalculation of damages, if any, in a manner consistent with this opinion.

In our discretion, we tax the costs of this appeal equally between the parties.

GODDARD, P.J., and SUSANO, J., concur.