IN THE COURT OF APPEALS OF TENNESSEE

| | |
|---|---|
| CREATIVE KITCHENS & INTERIORS, Inc., | ) C/A NO. 03A01-9611-CH-00379 |
| Plaintiff/Counter-Defendant/Appellant, | ) |
| v. | ) |
| WILLIAM F. BALE AND BECKY BALE, | ) APPEAL AS OF RIGHT FROM THE |
| | ) CAMPBELL COUNTY CHANCERY COURT |
| Defendants/Counter-Plaintiffs/Third-Party Plaintiffs/Appellees, | ) |
| v. | ) |
| SUSAN SPROUSE SEALS, | ) |
| Third-Party Defendant/Appellant. | ) HONORABLE BILLY JOE WHITE, ) CHANCELLOR |

FILED

August 26, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

For Appellants

GAIL F. WORTLEY
Knoxville, Tennessee

For Appellees

CHARLES A. WAGNER III
Wagner, Myers & Sanger, P.C.
Knoxville, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                           Susano, J.

Creative Kitchens & Interiors, Inc. (CKI) sued William F. and Becky Bale ("the Bales") for specific performance of two contracts for design consulting services and the furnishing of cabinets and counter tops for the Bales' home. The Bales filed a counterclaim against CKI and a third-party complaint against Susan Sprouse Seals ("Seals"), CKI's president. After reaching a settlement agreement ("the Agreement"), the parties agreed to stay all court proceedings, pending compliance with the terms of the Agreement. When CKI's performance under the Agreement did not satisfy the Bales, they amended their claims to demand damages for an alleged breach of the Agreement and alleged violations of the Tennessee Consumer Protection Act of 1977, T.C.A. § 47-18-101, *et seq.* ("the Act"). After a bench trial, the trial court found that CKI and Seals had breached the Agreement, and that the Bales were therefore entitled to recover an overpayment of $23,468.01, attorney's fees of $8,240.49, and the remainder of an escrow payment they had deposited with the court; however, the court declined to award treble damages under the Act as requested by the Bales. CKI and Seals appealed, raising two issues which present the following questions for our review:

> 1. Does the evidence preponderate against the trial court's decision?
>
> 2. Did the trial court err in entering a judgment against the third-party defendant Seals?

As an additional issue, the Bales raise the question of whether the trial court erred in failing to award them treble damages under the Act. We affirm.

The Bales originally retained Seals, the president of CKI, as a consultant to aid in remodeling their kitchen and other parts of their home, paying her $750 as a down payment on May 4, 1994. The Bales subsequently signed a contract with CKI for Seals' services at a rate of $75 per hour. After the Bales expressed their desire to purchase high-quality cabinets, Seals displayed such cabinets to them at the CKI showroom. Seals assured the Bales that their new cabinets would be identical or comparable to those in the showroom. She also indicated that the cabinets would be of solid-wood construction; in fact, Ms. Bale testified that Seals laughed at the existing cabinets in the Bales' home because they were made of flake-board.

Relying on Seals' representations regarding the cost and quality of the cabinets and counter tops, the Bales entered into two contracts with CKI in December, 1994. The contracts provided for the installation of various cabinets and counter tops in the Bales' home and called for the Bales to deposit 50% of the total price in advance.

The relationship between the parties began to deteriorate in May, 1995, when the Bales decided that the price of the cabinets, counter tops, and other fixtures--which exceeded $50,000-- was exorbitant in comparison to market prices for similar materials. The Bales chose to proceed with the contract for the cabinets, but they requested that the contract for the counter tops be canceled and that the deposit for the counters be

applied to the price of the cabinets.  CKI and Seals subsequently refused to install the kitchen cabinets until further amounts were paid by the Bales.  Seals also refused the Bales' requests regarding the counter top contract.  When the Bales failed to pay the remainder of the contract price, CKI filed this action seeking specific performance of the contracts.  After the Bales filed an answer, counterclaim and third-party complaint, the parties entered into the Agreement, whereby CKI and Seals would deliver and install the cabinets, and the Bales would make specified payments.  CKI and Seals also consented to cancel the contract for the counter tops and to apply that deposit against the price of the cabinets.  In the meantime, the Bales had paid into court an escrow deposit of $30,720.75, representing the balance owed under the contracts for full performance.  The Agreement states that CKI could draw upon the escrow funds only "after the Bales determine that all the cabinets meet the contract specifications, are equal to the sample as displayed in CKI's office, and fit the Bales' home."  The Agreement also provides, in pertinent part, that

> Seals shall provide services... as necessary to assure that the cabinets are of the highest quality and properly installed in the Bales' residence.

> * * * *

> The parties agree to communicate by telephone and to cooperate together to carry out this agreement.

> Time is of the essence in the performance of this agreement.  Should CKI fail to timely deliver and install the cabinets as specified in this agreement, the Bales retain all their rights and remedies for breach of this agreement.  Should litigation be required to enforce this agreement or to seek recovery or

4

> damages for breach of this agreement, the
> prevailing party or parties shall be entitled
> to recover its, her, his or their reasonable
> attorney fees and costs.

The Agreement was signed by the Bales and twice by Seals, both individually and as president of CKI.

The first cabinets were delivered on October 5, 1995. Upon inspection, the Bales found the cabinets to be of much lower quality than those which Seals had displayed in the CKI showroom; in fact, they were constructed of flake-board. The general contractor for the project testified that the cabinets were "factory type," rather than custom-made, solid wood cabinets. In addition, there were multiple problems associated with the installation of the cabinets. The trial court found:

> The [first] cabinets were delivered and were
> constructed of flake-board. They did not
> meet the sample shown provision and they were
> not cut to fit properly in the Bales' home.
> There were *many,_many* problems with the first
> set of cabinets.

(Emphasis in original).

The Bales attempted several times, without success, to contact Seals, hoping to have her visit the house and endeavor to resolve the problems with the cabinets. The trial court found that Seals "was not on the job site and would not communicate concerning the problems with the [first set of] cabinets." The Bales then terminated the Agreement with CKI and Seals because of their defaults, arranged for the removal of the nonconforming

5

cabinets, and canceled the second delivery of cabinets at no charge to any of the parties.

After the Bales amended their claims to seek damages for breach of the Agreement and violations of the Tennessee Consumer Protection Act, CKI and Seals filed an answer, and the case proceeded to trial. After a bench trial, the court awarded judgment against CKI and Seals, jointly and severally. The court opined in its memorandum opinion as follows:

> It is the opinion of this Court that Ms. Seals and Creative Kitchens breached this contract in providing noncomplying goods and not doing proper measurements to assure their fit. She also breached this contract when she refused to communicate or remedy the problems at and before the Bales terminated the contract.
>
> It is further my opinion that Ms. Seals and Creative Kitchens had a much higher duty and responsibility in this case than in a normal arms-length transaction because of being paid $75.00 per hour as a consultant. She violated her fiduciary duty by not telling the Bales about the flake-board construction, refusing to communicate at a crucial juncture of the contract, and not being on the job site for proper measurements.
>
> This is a case where Ms. Seals and Creative Kitchens took gross advantage of unwary and trusting young homeowners.
>
> This is a case bordering upon fraud and violation of the Tennessee Consumers Protection Act for treble damages but the Court elects to not pursue this punitive course.

The court then entered judgment for the Bales in the amount of their overpayment of $23,468.01, their attorney's fees of $8,290.49, the remainder of their escrow deposit, and costs.

6

II

In this non-jury case, our review is *de novo* upon the record with a presumption of correctness as to the trial court's findings, unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.; **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993); **Carter v. Krueger**, 916 S.W.2d 932, 935 (Tenn.App. 1995). The trial court's conclusions of law come to us free of any such presumption. **Union Carbide Corp.**, 854 S.W.2d at 91.

We also note that the trial court is in the best position to assess the credibility of the witnesses; therefore, such determinations are entitled to great weight on appeal. **Massengale v. Massengale**, 915 S.W.2d 818, 819 (Tenn.App. 1995); **Bowman v. Bowman**, 836 S.W.2d 563, 566 (Tenn.App. 1991).

III

In their first issue, Seals and CKI argue that the evidence preponderates against the trial court's judgment. They contend that Mr. Bale was not, as the trial court found, an "unwary and trusting" homeowner, but instead was an experienced negotiator of contracts. They also contend that the Bales failed to give them adequate notice or an opportunity to cure the defects in the cabinets.

We cannot agree with the appellants' assertions. Although the evidence indicates that Mr. Bale was knowledgeable

8

regarding contracts in general, it is nevertheless clear that he and his wife placed their trust in Seals; as found by the trial court, "[t]he Bales apparently had great confidence in Susan Seals and totally relied upon her representations." While it is true that a breaching party must be given notice and a reasonable opportunity to correct defects before the non-breaching party may terminate a contract, *Carter*, 916 S.W.2d at 935-36, in this case, Seals and CKI did have adequate notice of the "*many, many problems*" with the cabinets, as well as an opportunity to cure those problems. The evidence in this case supports the trial court's conclusion that Seals failed to communicate sufficiently with the Bales in the period between the installation of the defective cabinets and the Bales' termination of the Agreement.

In short, the evidence supports the trial court's finding that Seals and CKI breached the Agreement. Specifically, it is clear that the cabinets that were actually delivered were not of comparable quality to those displayed by Seals in the CKI showroom; that the cabinets did not fit properly in the Bales' home; and that Seals did not communicate with the Bales in an effort to correct the defects and fulfill her obligations under the Agreement. The occurrence of each of these contingencies was in direct contravention of the Agreement. It is also apparent that the trial court accredited the testimony of Mr. and Mrs. Bale. As noted earlier, determinations regarding the credibility of witnesses are entitled to great weight on appeal. *Bowman*, 836 S.W.2d at 566.

Because we find that the evidence does not preponderate

9

against the trial court's decision, Rule 13(d), T.R.A.P., we hold that the appellants' first issue is without merit.

IV

In their second issue, Seals and CKI insist that the trial court erred in entering a judgment against Seals in her individual capacity. They contend that Seals acted at all times as the agent or representative of CKI, and that any damages that occurred arose solely out of contracts or payments between the Bales and CKI.

The appellants' argument overlooks the fact that Seals contracted with the Bales not only in her capacity as president of CKI, but also in her individual capacity as a consultant and fiduciary. The Bales originally retained Seals as a design consultant at the rate of $75 an hour. More importantly, Seals executed the Agreement with the Bales both individually and as a representative of CKI. This is evidenced by the fact that she signed the Agreement in two places. Her first signature clearly was affixed on an individual basis, as it reflects no title or other association with CKI. The second signature, on the other hand, obviously was on behalf of the corporation. It appears under the words "CREATIVE KITCHENS, INC."; it is preceded by the notation "By"; and it is followed by the title "President." Thus, Seals became a party to the Agreement in a dual capacity-- individually and on behalf of CKI.

A corporate officer may be held personally liable on a

10

contract that he or she has signed in both an individual and representative capacity. *See, e.g., **Bill Walker & Assoc. v. Parrish***, 770 S.W.2d 764, 770 (Tenn.App. 1989). That is precisely the situation in the instant case. Seals signed the Agreement in her personal capacity, thereby incurring, among other things, the obligation to ensure that high-quality cabinets were properly installed and to communicate with the Bales to effectuate the goals of the Agreement. In so doing, she assumed personal liability for any breach of the Agreement. We therefore hold that the trial court did not err in finding Seals and CKI jointly and severally liable once it correctly determined that they had breached the Agreement.

V

As a third issue for our consideration, the Bales raise the question of whether the trial court erred in failing to award them treble damages under the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.* The Act provides, in pertinent part,

> ...the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:
>
> \*   \*   \*   \*
>
> Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
>
> \*   \*   \*   \*
>
> Engaging in any other act or practice which is deceptive to the consumer or to any other person....

T.C.A. § 47-18-104(7),(27).  The Act confers a private right of action on an individual who has sustained damages as a result of a violation of its provisions.  *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 305 (Tenn.App. 1984); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 591 (Tenn.App. 1980).  It provides that

> [i]f the court finds that the use or
> employment of the unfair or deceptive act or
> practice was a willful or knowing violation
> of this part, the court may award three (3)
> times the actual damages sustained and may
> provide such other relief as it considers
> necessary and proper.

T.C.A. § 47-18-109(a)(3).  Thus, the Act vests the trial court with wide discretion in awarding treble damages or other relief.  *Id.; see also* *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12 (Tenn.App. 1992).

The Bales contend that Seals and CKI are guilty of violating T.C.A. § 47-18-104(7) or (27), quoted above.  They argue that the trial court's findings of fact compel, as a matter of law, the imposition of liability under the Act and the award of treble damages.  We disagree.  Although the trial court noted that Seals' and CKI's actions approached violations of the Act, the Act does not *require* the court to award treble damages.  The statutory language is *permissive* rather than mandatory, as is evidenced by its provision that the trial court "may"--as opposed to "shall"-- award treble damages in appropriate circumstances.  T.C.A. § 47-18-109(a)(3).

12

Upon review of the record, we find no abuse of discretion on the part of the trial judge; nor can we say that the evidence preponderates against his decision to deny treble damages to the Bales.

Accordingly, the judgment of the trial court is, in all respects, affirmed. Costs on appeal are assessed against the appellants and their surety. This case is remanded to the trial court for enforcement of the trial court's judgment and for collection of costs assessed there, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.


CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.