# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 9, 2011 Session

## NORMAN LEE ROBINSON v. MERS, INC. ET AL.

**Appeal from the Circuit Court for Grainger County**
**No. 8435-III      Rex Henry Ogle, Judge**

---

**No. E2010-01592-COA-R3-CV - FILED - APRIL 29, 2011**

---

This is an appeal by Norman Lee Robinson from a summary judgment granted against him and in favor of his lender, Citizens Bank, and GMAC Mortgage, LLC, the assignee of Robinson's secured note. Robinson filed this action against Citizens Bank and GMAC, as well as others, to stop what he alleged was a wrongful foreclosure. He also demanded compensatory and punitive damages. The substance of the action is that the defendants should not be permitted to require Robinson to pay into escrow, funds that had been improperly refunded to him. The trial court held that Robinson was in default and that the foreclosure was not wrongful because, despite some dispute as to certain facts, there was no genuine dispute concerning the facts material to the outcome of this case. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Norman Lee Robinson, Bean Station, Tennessee, appellant, pro se.

H. Frederick Humbracht, Jr., Nashville, Tennessee, for the appellees, MERS, Inc., and GMAC Mortgage, LLC.

Robert M. Estep, Tazewell, Tennessee, for the appellee, Citizens Bank.

**OPINION**

**I.**

Norman Lee Robinson borrowed $86,400 from Citizens Bank. The loan was to be repaid in 360 monthly installments. To secure the loan, Robinson executed a deed of trust encumbering his residence. The deed of trust requires that Robinson's monthly payments include an amount sufficient to fund an escrow account to pay taxes and insurance on the property. When the loan was closed, Citizens Bank provided Robinson with an Initial Escrow Account Disclosure Statement that set forth the anticipated payments to and disbursements from the escrow account for the year beginning February 9, 2005. It reflects a beginning escrow balance of $257.06, presumably funded by the loan, with monthly payments to escrow of $85.66. It projects a disbursement of $316 for taxes in October 2005 and a disbursement in February 2006 of $712 for insurance.

Robinson made his payments to Citizens Bank in a timely fashion. Through a series of assignments, GMAC Mortgage, LLC[1], became the assignee of the note and beneficiary of the deed of trust on or about April 28, 2006. GMAC also received the escrow account. Thereafter, Robinson made his payments to GMAC. Unbeknownst to GMAC, Citizens had not made the disbursements to pay the taxes in October 2005 and the insurance premium scheduled for February 2006. Thus, when GMAC ran an analysis of the escrow account in June of 2006, it determined that the account had a surplus of $984.77; accordingly, it refunded that amount to Robinson. The deed of trust requires the lender to "account to [the borrower] for the excess funds." GMAC later learned that the taxes and insurance premium had not been paid. The insurance policy lapsed, but Robinson did not sustain a casualty loss during the time frame of the lapse. GMAC made the tax payment on or about August 11, 2006 and made the payment to reinstate the property insurance on or about September 19, 2006. Thereafter, GMAC made disbursements for taxes on an annual basis and made disbursements for insurance premiums in October 2007 and October 2008. In April of 2007, GMAC conducted a review of the escrow account and determined that the account was under-funded by the amount of $933.10. It notified Robinson that he could either pay the shortage in one payment, in which case his monthly mortgage payment would be $737.21, or he could spread it out over 12 monthly payments of $814.96, beginning June 1, 2007. This procedure is authorized by paragraph 3 of the deed of trust.

---

[1] Defendant MERS, Inc., was in the chain of assignments. We will refer to MERS, Inc., and GMAC Mortgage, LLC, collectively as "GMAC" because GMAC was the party that serviced the loan and because the two entities' interests appear to be identical as far as this litigation is concerned.

Robinson began making monthly payments of $737.21 but did not pay the escrow shortage. Because the monthly payment of $737.21 was approximately $77 short, GMAC began posting the payments to a "suspense" account and crediting the monies as payments on the loan only as funds were available to make a full monthly payment. This procedure is authorized under the deed of trust. Accordingly, Robinson's payments fell into arrears. Robinson's loan was declared in default; however, between July 2007 and October 2008, Robinson was provided with numerous written explanations of how the deficiency arose and what he could do to bring the loan current.

In late 2008, GMAC accelerated the balance due under the note and refused to accept payments for anything less that the full outstanding balance. Nevertheless, it advised Robinson that alternative arrangements could possibly be made. Ultimately, GMAC scheduled a foreclosure sale on January 15, 2009, pursuant to the deed of trust.

GMAC, as a supplier of information to various credit reporting agencies, reported the account as past due beginning in July 2007. It later reported that the account was placed in foreclosure. Citizens Bank did not make any negative reports on Robinson; his earlier payments to it had always been timely and in the correct amount.

Robinson filed his complaint in this action to enjoin the foreclosure sale claiming, in essence, that he had paid the correct amounts due and that foreclosure would be wrongful. He also alleged that the defendants had damaged "his character, reputation and credit . . . by . . . falsely reporting/publishing incorrect information regarding his account/loan." Further, he alleged that the defendants' actions amounted to "breach of contract; negligence; intentional/negligent misrepresentation; intentional infliction of emotional distress and defamation" for which he sought compensatory and punitive damages. GMAC voluntarily cancelled the foreclosure sale so that a hearing on the request for injunctive relief was not necessary.

Although the record before us does not contain proof of service, Robinson, by his counsel at the time, filed a motion for default on April 3, 2009 that states "[a]ll named Defendants were served by certified mail with the Compliant on January 13, 2009" and "have failed to plead or otherwise defend." Counsel for Citizens filed his notice of appearance on April 7, 2009. GMAC filed its answer and counterclaim for foreclosure on April 8, 2009. Citizens Bank filed its answer on May 6, 2009.

GMAC filed its motion for summary judgment in February of 2010. It set forth the above facts as undisputed and concluded that "[w]hen [Robinson] failed to make the required payments, he defaulted and is the author of his own misfortune." GMAC's motion also asserts that the "state law claims relating to the reporting of information as to the loan are

preempted by the Fair Credit Reporting Act." Citizens filed a motion similar to GMAC's and, in addition, stated "Citizens Bank did not file any reports against [Robinson's] credit which would result in a negative report. All of the payments made while Citizens Bank serviced the loan were timely and therefore, only good reports were made."

Robinson filed a response to both motions which relied upon his own affidavit. Robinson's affidavit confirms the key events we have outlined, but states that GMAC supplied inconsistent reports of the escrow deficiency that left him confused as to what to pay. Robinson states that, through September 2008, he "continued to request information and an understandable explanation regarding the alleged escrow shortage from GMAC by mail and telephone."

The court granted the defendants' motions. Its order states, in pertinent part:

> The Court finds, that while mistakes may have been made in failing to pay insurance and taxes by Citizens Bank, [Robinson] did not sustain a loss as a result of that failure. Indeed, the proof shows that upon performing an escrow account analysis in 2006, GMAC Mortgage determined that the escrow account had been overfunded and returned the amount of the overfunding to [Robinson]. Although [Robinson] states that he disputes the proof offered by GMAC Mortgage as to the application of payments, there is simply no proof by [Robinson] as to what amounts were actually due, or not due. The Affidavit of Scott Zeitz, and Exhibit F thereto, submitted by GMAC Mortgage reflects the receipt of all payments made by [Robinson] during the relevant period of time, the allocation of the payments to principal, interest and escrow, the amount of payments made from escrow and the balance due on the loan.

> The Court agrees with GMAC Mortgage that it had the right and obligation under RESPA, 12 U.S.C. § 2601, and Regulation X 24 C.F.R., Part 3500, and the deed of trust to perform an escrow account analysis and adjust the payments based on its calculations.

> While [Robinson] claims not to understand the basis upon which the escrow adjustments were based, he has not provided any proof as to the proper amount of the escrow payment. Again the Court finds that the proof offered through the Zeitz Affidavit

and exhibit E establish the amount of the required payments. [Robinson] failed to pay those amounts as required and under the terms of the deed of trust, that constitutes a default. As a result of the default, GMAC Mortgage accelerated the indebtedness and demanded payment in full.

The Court further finds that upon filing this action seeking to enjoin the foreclosure proceeding, [Robinson] was required to pay into Court such undisputed amounts as may be necessary to avoid a loss. The equitable maxim, *he who seeks equity must do equity*, applies. Every person has a duty to mitigate damages.

The Court further finds that [Robinson's] claims for damages relate to the alleged furnishing of incorrect information to credit reporting agencies. As such, the Court finds that the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* applies. The state law claims asserted by [Robinson] are preempted by the Act, 15 U.S.C. § 1681(t). The Court finds that the claim that Citizens Bank and GMAC Mortgage supplied inaccurate information to a credit reporting agency fails to state a claim under 15 U.S.C. § 1681s-2(a) since the Fair Credit Reporting Act does not provide a private right of action for violations of § 1681s-2(a).

With respect to the counterclaim by GMAC Mortgage, the Court is of the opinion that GMAC Mortgage should first foreclose upon the real estate to determine whether there remains a deficiency. The Court announced that it would withhold action upon the counterclaim pending foreclosure.

As evidenced by the signature of counsel for GMAC Mortgage and pursuant to Rule 41.03, Tenn. R. Civ. P., GMAC Mortgage hereby dismisses, without prejudice, its counterclaim . . . .

(Italicized material in original.)

Robinson filed a timely motion to set aside the order granting summary judgment on grounds that can be summarized as follows:

The trial judge was biased as shown by, among other things, allowing numerous bailiffs to surround Robinson during an earlier hearing;

There were too many factual disputes to allow summary judgment;

The court should have granted default judgment against the defendants; and

The defendants admitted a breach by not disbursing the escrow funds at the proper time and, therefore, as breaching parties cannot hold Robinson liable for a subsequent breach.

The record contains a transcript of the hearing on the motion to set aside, which the court treated as a motion to alter or amend. The court allowed Robinson the opportunity to offer any arguments he wanted in support of his motion. It also explained to Robinson that it had no personal experience with him and no personal bias against him or in favor of the defendants. Further, it explained to Robinson that the bailiffs acted of their own accord and without any direction from the court in gathering around him at a hearing. Robinson offered no evidence to challenge the court's statements from the bench. At the end of argument on the motion, the court announced that it was denying the motion. Subsequently, it entered an order to that effect.

II.

Robinson has appealed. The substance of the issues he has raised[2] are:

---

[2]His actual statement of the issues presented, verbatim, is:

Whether the Grainger County Circuit Court erred in not granting plaintiff default judgment, erred in agreeing with defendants that plaintiff was in default, erred in granting defendants' Summary Judgment, erred in invoking maxims, erred in ruling that defendant's admitted breaches had no bearing on the case, erred in not enforcing the contract as written, erred in ruling that defendants mistakes were not negligence, erred in denying plaintiff due process of law, erred in not enforcing judicial rules, procedures and precedence, and erred in refusing to forward this case to a jury trial.

Obviously, there is overlap and redundancy in his issues as stated in the above-quoted paragraph.

Whether the trial court erred in not granting default judgment against the defendants.

Whether the trial court erred in not holding that the admitted failure of Citizen's Bank to make the disbursements for insurance and taxes prevented the defendants from holding him in breach of the same contract.

Whether the record demonstrates genuine issues of material fact.

III.

As the order granting summary judgment is at the heart of this appeal, it will be helpful to review the law applicable to summary judgments and the scope of review as stated in *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76 (Tenn. 2008):

> The moving party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *accord* **Penley v. Honda Motor Co.**, 31 S.W.3d 181, 183 (Tenn. 2000). The moving party has the ultimate burden of persuading the court that there are no genuine issues of *material* fact and that the moving party is entitled to judgment as a matter of law. **Byrd v. Hall**, 847 S.W.2d 208, 215 (Tenn. 1993). Accordingly, a properly supported motion for summary judgment must show that there are no genuine issues of *material* fact and that the moving party is entitled to judgment as a matter of law. *See* **Staples v. CBL & Assocs., Inc.**, 15 S.W.3d 83, 88 (Tenn. 2000); **McCarley v. W. Quality Food Serv.**, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party fails to make this showing, then "the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails." **McCarley**, 960 S.W.2d at 588; *accord* **Staples**, 15 S.W.3d at 88.

\* \* \*

> If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. . . . . The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of *material* fact shall be resolved in favor of the nonmoving party. *McCarley*, 960 S.W.2d at 588. "A disputed fact is *material* if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*
>
> Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. *Blair [v. W. Town Mall]*, 130 S.W.3d [761, 763 (Tenn.2004)]. In addition, we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party. *Staples*, 15 S.W.3d at 89.

*Id.*, at 83-84 (emphasis added). A trial court's decision whether to grant a motion to alter or amend its judgment is reviewed for abuse of discretion. *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003). The trial court's denial of a motion for default judgment is also reviewed under the deferential abuse of discretion standard. *See Patterson v. SunTrust Bank*, 328 S.W.3d 505, 509 (Tenn. Ct. App. 2010).

IV.

We begin by noting that Robinson's pro se brief is not a model of clarity. It often moves abruptly from one issue into another and then another, with occasional flashbacks and occasional mention of isolated propositions which do not necessarily relate to the argument then being made. We mention this lest Mr. Robinson or the reader think that we have ignored any part of his arguments. We have not. The format of the brief and the reply have caused us to focus on the predominate themes, without ignoring any of the substance.

We will begin with Robinson's argument that the trial court should have held the defendants in default because they did not file their answers until after he had filed his motion for default. The defendants point out that although Robinson filed the motion for

default, he never set it for hearing. The record does not contain either a notice of hearing or an order disposing of the motion. The record does contain a motion for a pretrial conference filed by trial counsel for Robinson; one function of a pretrial conference is to define the substantive issues. The implication of that filing is that counsel for Robinson was satisfied that the motion for default judgment had done what it was intended to do – force the defendants to file their answer – and that he saw nothing to be gained in pressing the motion for default. A trial court cannot be expected to scour the file in every case to make sure that every motion filed by every party in the case is argued; it is the proponent's obligation to secure hearing dates for its motions. Accordingly, we find no abuse of discretion by the trial court in not granting the dormant motion for default.

Even if we assume that the trial court would have been obligated to grant the motion had it been presented,[3] we are constrained by Tenn. R. App. P. 36(a) from granting relief based on an error Robinson or his counsel could have prevented. Rule 36(a) states, in pertinent part, "Nothing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." *See also* **Nunn v. Walker**, 212 S.W.2d 665, 668 (Tenn. 1948)(prior to adoption of Tenn. R. Civ. P., Supreme Court held that alleged failure to grant a pretrial motion would not justify a reversal without a showing that it was presented to and acted upon by the court). Accordingly, we hold that there was no reversible error in the failure to grant the motion for default judgment.

We will discuss next Robinson's assertion that the defendants breached the contract first by failing to pay the taxes and insurance at the scheduled times and therefore cannot hold him responsible for any subsequent breach. He contends that once Citizens Bank "admitted breach of contract, . . . the [Summary Judgment] Hearing should have stopped and the case should have been forwarded to a jury trial." He relies on the rule of law as stated in **Carter v. Krueger**, 916 S.W.2d 932, 936 (Tenn. Ct. App. 1995), that "[a] party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract." GMAC states that the alleged breach was by Citizens and therefore cannot be blamed on GMAC. This position ignores the fact that GMAC received all its rights and obligations by assignment from Citizens. GMAC and Citizens both argue that Robinson did not sustain any damages as a result of Citizens' failure

---

[3]We are convinced that the trial court, under the circumstances would have been within its discretion to deny the motion for default had it been presented, and that it certainly would have been within its discretion to grant the defendants relief from the default had it been granted. *See* **Parks v. Mid-Atlantic Finance Co., Inc.**, No. E2009-02593-COA-R3-CV, 2011 WL 335092 at * 4 (Tenn. Ct. App. E.S. filed Jan. 31, 2011)(trial court has discretion to excuse some delay).

to pay the taxes and insurance, but neither offer any helpful law on the subject. Our independent research indicates that *Krueger* answers the question, and the answer is not favorable to Robinson. According to *Krueger*, "where both parties have not fully performed, it is necessary for the courts to determine which party is chargeable with the first uncured material breach." 916 S.W.2d at 936-37 (*quoting McClain v. Kimbrough Const. Co.*, 806 S.W.2d 194 (Tenn. Ct. App. 1990))(emphasis in *Krueger* omitted). Without some limitation on the rule that the first to breach can never recover, a party in Robinson's position could argue that it is relieved of any obligation to repay the debt by the mere fact of a technical defect that did not do it any harm. This is close to what Robinson has asked for in this case. It is clear that Robinson received the payment from GMAC representing what it thought was a surplus in the escrow account. He admits receiving it. He has not paid it back. He was without insurance for a time, but, fortunately for all parties, there was no fire or other casualty loss that caused him damages during the period of the lapse. The taxes were paid and the insurance coverage was reinstated. Thus, Robinson is not saved by the fact that Citizens Bank failed to timely make the disbursements.

This leads us to the question of whether the trial court erred in granting summary judgment. Robinson focuses on the fact that the trial court noted in one of the hearings that "there is a lot of dispute." Robinson fails to appreciate, however, that even a factual dispute will not preclude summary judgment unless the dispute is genuine and disputed fact is material to the outcome.

> "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

*Martin*, 271 S.W.3d at 84. We have reviewed the record and the trial court's order granting summary judgment, and we have concluded that the trial court correctly decided that, although there was a "lot of dispute," there was no genuine issue as to any material dispositive fact. In particular, the affidavit of Zietz submitted by GMAC and the attachments thereto establish (1) that GMAC acted properly under the deed of trust in making what it in good faith thought was a reimbursement to Robinson for excess funds, (2) that it later made the payments necessary to cover property taxes and reinstate insurance, (3) that it demanded that Robinson replenish the escrow account as was its right under the deed of trust, (4) that Robinson defaulted by failing to make the payments necessary to replenish the escrow account and bring the payments current and (5) that Robinson failed to cure his default despite being given numerous opportunities. Therefore the defendants were entitled to summary judgment.

Our disposition as to the above major themes obviates the need to address many of the other assertions. For example, if the defendants had the right to declare a default and so reported that default to others, the report was not defamatory. We have considered all the other assertions, such as that the defendants made up and submitted fraudulent documents, and that the trial court was biased. We hold they are without merit. The trial court correctly held that the Fair Credit Reporting Act controls the allegations concerning furnishing of incorrect credit information, and that it does not provide a private right of action against Citizens or GMAC under the facts alleged. *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 501-502 (W.D. Tenn. 1999).

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Norman Lee Robinson. This case is remanded, pursuant to applicable law, for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE