# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 3, 2021

## JOSEPH CHRISTOPHER ARCHER, ET AL. v. RON NOONAN

**Appeal from the Circuit Court for Putnam County**
**No. 2018-CV-88    Jonathan L. Young, Judge**

_____

### No. M2020-01266-COA-R3-CV

_____

This case involves an action filed by homeowners against their contractor for breach of contract regarding the installation of a swimming pool. The general sessions court entered judgment for plaintiffs. Defendant appealed to the circuit court which also entered judgment for the plaintiffs. The defendant appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

William A. Cameron and Bradford G. Wood, Jr., Cookeville, Tennessee, for the appellant, Ron Noonan.

Austin T. Warehime, Nashville, Tennessee, for the appellees, Joseph Christopher Archer, and Margaret Rose Archer.

## OPINION

### I.    FACTS & PROCEDURAL HISTORY

On July 17, 2016, Ron Noonan ("the Contractor") entered into a contract for the installation of a swimming pool on the property of Joseph Christopher Archer and Margaret Rose Archer ("the Archers"). The contract did not contain a date for completion or a "time is of the essence" provision. The contract stated in article 4 that ". . . [the Contractor] will remedy any defect in the workmanship of which it receives WRITTEN notice within one year after connection of the filter, WITHOUT ADDITIONAL COST to the OWNERS."

On June 5, 2017, the Archers sent a certified letter to the Contractor. This letter stated that the initial estimate to build the pool was 45 days and that the pool was filled with water for the first time on April 2, 2017. The letter further stated that the Contractor had 30 days to fix a pool leak and have the pool properly functioning to full depth. The Archers also informed the Contractor that if there was not significant progress to fix the pool leak within 10 days, then they would be forced to "accelerate further action." This letter was not received by the Contractor. However, the Archers provided notice of the problems with the pool to the Contractor through text messages. The text messages showed that the Contractor was working with the Archers to resolve the issues. Although the pool did not hold its intended amount of water, the Archers continued to use the pool.

The Archers sought a second opinion from Mr. Dave Sherman of Straight Arrow Construction who inspected the pool and completed his report on August 25, 2017. Mr. Sherman stated in his report that "[t]he pool is losing water at a rate of 6 inches per 12[-]hour period when the pool is filled to operation height." After finding and filling 75 holes and 3 major leaks in the pool, Mr. Sherman stated in the report that "12 hours later the pool still lost 6 inches of water." Mr. Sherman concluded in the report that "I don't believe that this pool can be fixed as it has been built[.] I believe that the only option is to start over with a new pool." Thereafter, the Archers had the pool dug up.

On August 22, 2017, the Archers filed a civil summons in the Putnam County General Sessions Court. After several failed attempts to serve the Contractor which necessitated filing additional civil summons, and multiple continuances, the case was set for final hearing in the general sessions court on May 15, 2018. The general sessions court entered judgment for the Archers against the Contractor in the amount of $24,999.00, plus interest at the rate of 6.50% and costs for suit.

The Contractor timely filed a notice of appeal in the Putnam County Circuit Court, which held a final hearing on the matter on August 5, 2020. At the final hearing, the Archers presented two witnesses: Mr. Archer and Mr. Dave Sherman, who testified as an expert witness. Mr. Sherman testified that the cause of the continued pool leakage was improper pool construction by the Contractor. There was no cross-examination of Mr. Sherman. The Contractor testified for himself, but called no other witnesses. He testified that he worked with the Archers to fix the problems with the pool. He further testified that he went to work on the pool a few days later, after Labor Day 2017, as requested by the Archers. When he arrived, the Archers had already dug the pool up.

Based upon the testimony presented, the circuit court entered judgment for the Archers against the Contractor in the amount of $22,000.00, plus court costs and costs of the appeal from the general sessions court. The court found that there was a valid contract enforceable against both parties and that the pool was partially usable, but leaked and was not constructed such as was contracted for by the parties. The Contractor timely filed a

notice of appeal.

## II. ISSUES PRESENTED

The Contractor presents the following issue for review on appeal, which we have slightly restated:

1. Whether the trial court erred in determining that the [Contractor] was in breach of contract and awarding judgment to the [Archers] when the evidence shows that the [Archers] were the first and only party to materially breach the contract.

For the following reasons, we affirm the decision of the circuit court.

## III. STANDARD OF REVIEW

On appeal, we review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010). Factual determinations based on a trial judge's assessment of witness credibility receive a higher degree of deference. *Madden Phillips Const., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 809 (Tenn. Ct. App. 2009). We will not reverse a finding of the trial court based on credibility unless clear and convincing evidence shows the finding to be in error. *Id.* (citation omitted). Questions of law are also reviewed *de novo* but with no presumption of correctness. *Eberbach v. Eberbach*, 535 S.W.3d 467, 473 (Tenn. 2017) (citing *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006); *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005)).

## IV. DISCUSSION

The trial court found that a contract existed between the parties to install a pool and that there was pool leakage. On appeal, the Contractor argues that the trial court erred in finding that he was in breach of contract and awarding judgment to the Archers. Instead, the Contractor argues that the Archers were the first and only party to materially breach the contract by denying him the right to cure the defects when they dug the pool up.

From the record, there is no evidence that this argument was presented to the trial court. There is not a transcript of the proceedings. The Statement of the Evidence filed in this matter only briefly describes the Contractor's testimony as follows:

The Defendant-Appellant testified that he worked with the Plaintiffs-Appellants to fix the problems with the pool. The Defendant-Appellant further testified that he went to work on the pool a few days after Labor Day, 2017, as requested by the Plaintiffs-Appellees, but the Plaintiffs-Appellees had already dug the pool up, leaving nothing but a hole in the ground. The

- 3 -

Defendant-Appellant admitted into evidence photos of the hole in the ground with the pool removed as Exhibit 2 in support of this testimony.

The Defendant-Appellant rested his case after he was cross-examined.

Although the Contractor may have testified as to these allegations, there is nothing in the limited record to show that he made an argument that the Archers breached the contract. There is no pleading containing a counter-claim and no ruling by the trial court on this issue. "[W]e are limited in authority to the adjudication of issues that are presented and decided in the trial courts." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31-32 (Tenn. 2001). Based upon the Contractor's failure to raise these arguments to the trial court, we will not consider them on appeal.

As previously stated, there is no dispute that the parties entered into a contract. Therefore, our analysis will focus on whether the evidence shows that the Contractor breached the contract, and if so, whether that breach rose to the level of a material breach. *M & M Elec. Contractor, Inc. v. Cumberland Elec. Membership Corp.*, 529 S.W.3d 413, 424 (Tenn. Ct. App. 2016) (stating that "[t]he existence of an uncured material breach by one party gives the non-breaching party the ability to rescind or 'terminate' the contract").

### A. The Trial Court's Finding of a Breach of Contract

"Whether a party has fulfilled its obligations under a contract or is in breach of the contract is a question of fact." *See Carter v. Krueger*, 916 S.W.2d 932, 934-35 (Tenn. Ct. App. 1995). The trial court determined "the pool was not constructed such as was contracted for by the parties." The trial court states in its Order that it based its findings "upon the testimony presented by the [parties]." As the Archers' expert witness, Mr. Sherman testified that the cause of the pool leakage was improper construction by the Contractor. There was no cross-examination of Mr. Sherman. After the Archers rested their case, the Contractor presented himself as the sole witness for his defense. The Contractor testified that he worked with the Archers to fix the pool leakage, but they later dug the pool up based on Mr. Sherman's recommendation that the pool be completely redone. Based upon this testimony, the trial court found "that while the pool was partially usable, the pool was not constructed such as was contracted for by the parties."

On appeal, we give great weight to the trial court's judgment based on witness credibility. *Brooks v. Ibsen*, No. E2000-02870-COA-R3-CV, 2001 WL 963722, at *4 (Tenn. Ct. App. Aug. 24, 2001). "[I]t is implicit in the trial court's judgment that [it] credited the testimony" of Mr. Sherman concerning the cause of the continued pool leakage. *Id.* "The trial court had the opportunity to observe the manner and demeanor of the various witnesses and assess their credibility." *Id.* Consequently, the trial court's "determination [is] given great weight on appeal." *Id.* (citations omitted). We have further explained that there must be clear and convincing evidence of error that warrants reversal

of the trial court's finding based on credibility of the witnesses. *Madden Phillips Const.,* 315 S.W.3d at 809 (citation omitted).

After reviewing the record, the evidence does not preponderate otherwise. We cannot find that the trial court erred when it found that "the pool was not constructed such as was contracted for by the parties" based upon the evidence presented. The Contractor did not cross-examine the Archers' expert witness, nor did the Contractor introduce testimony contradicting the expert witness as to the cause of the pool leakage or its severity. Therefore, we likewise conclude that the Contractor was in breach of contract for his failure to construct the pool as was contracted for by the parties.

We note that our analysis here is consistent with that we applied in *Brooks v. Ibsen*. *Brooks*, 2001 WL 963722, at *1. In *Brooks*, the plaintiff contracted with the defendant for the installation of a swimming pool that later developed several cracks. *Id.* The defendant agreed to remedy the breach without charge, and the plaintiff gave defendant permission to begin repairing the pool. *Id.* After seeking a second opinion that recommended the pool be completely redone, the plaintiff had a new pool installed over the old pool. *Id.* at *2. The trial court found for the plaintiff. *Id.* at *4-5. We reduced the award of the trial court so that the plaintiff was not placed in a better position than he would have been had there been no breach. *Id.* at *4. Otherwise, we affirmed the trial court's judgment for the plaintiff. *Id.* at *5.

### B. Material Breach

We now turn to whether the Contractor's breach of contract was material. To determine whether a breach is material, we look to § 241 of the Restatement (Second) of Contracts. *Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 225 (Tenn. Ct. App. 2009) (citations omitted). The following are the factors in determining whether a breach is material:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241.

Here, we focus on factors (a) and (d) to show that the Contractor's breach was material. *Id.* Although partially usable, the defects in the pool amounted to a material breach because the Archers were "deprived of the benefit which [they] reasonably expected." *Id.* Mr. Sherman stated in his report that "[t]he pool [was] losing water at a rate of 6 inches per 12[-]hour period when the pool [was] filled to operation height." After finding and filling 75 holes and 3 major leaks in the pool, Mr. Sherman stated in the report that "12 hours later the pool still lost 6 inches of water." Mr. Sherman concluded in his report that "I don't believe that this pool can be fixed as it has been built[.] I believe that the only option is to start over with a new pool." Based on the evidence in the record, the Archers bargained for a functional swimming pool, but were deprived of that benefit.[1]

In his testimony, Mr. Sherman stated that the cause of the pool leakage was the fact that the pool was improperly constructed by the Contractor. Mr. Sherman stated in his report that "the only option is to start over with a new pool." Mr. Sherman made this conclusion when the pool continued to lose water even after finding and filling 75 holes and 3 major leaks in the pool. Again, the limited record before us shows that the Contractor did not cross-examine Mr. Sherman, nor did the Contractor introduce testimony contradicting the expert witness as to the cause of the pool leakage, its severity, or other proposed methods to repair it.

Based upon the proof presented, we cannot find that the trial court erred when it found that "the pool was not constructed such as was contracted for by the parties" despite the pool being partially usable. The evidence shows that the Contractor was the first to materially breach the contract by failing to construct the pool as was contracted for by the parties.

## V. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed. Costs of this appeal are taxed to the appellant, Ron Noonan, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[1] Our reasoning is consistent with another prior case involving a defective pool, in which we held that "[i]f the defects in workmanship are so substantial that the performance of the contract made by the defendant is worthless, the contractor must pay the other party the cost of having the job redone." *Wilhite v. Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990) (citing 22 Am. Jur. 2d Damages § 68)). In this case, the Archers "bargained for and [are] entitled to a functional swimming pool." *Id.*