# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 15, 2002 Session

## JAMES KILLINGSWORTH, ET AL. v. TED RUSSELL FORD, INC.

**Appeal from the Circuit Court for Knox County**
**No. 1-149-00     Dale C. Workman, Judge**

### FILED DECEMBER 4, 2002

### No. E2002-01562-COA-R3-CV

---

This is an action under the Tennessee Consumer Protection Act[1] that arises out of the sale of an SUV. James Killingsworth, and his wife, Kathy Killingsworth ("the purchasers"), sued Ted Russell Ford, Inc. ("the seller"), alleging that the seller failed to advise them about damage to the previously-unowned vehicle sold to the purchasers. At the conclusion of the trial below, the jury returned a verdict in favor of the purchasers, awarding them $2,500. The purchasers then moved for attorney's fees and discretionary costs, which the court granted, but only in the amount of $500. The purchasers appeal, arguing that the fees and expenses awarded by the trial court are unreasonably low. By way of separate issues, the seller argues that the purchasers' second reply brief should be stricken and that the trial court erred in granting any fees and costs to the purchasers. We vacate and remand.[2]

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

George W. Morton, Jr. and J. Myers Morton, Knoxville, Tennessee, for the appellants, James Killingsworth and wife, Kathy Killingsworth.

J. Douglas Overbey and Ben M. Rose, Knoxville, Tennessee, for the appellee, Ted Russell Ford, Inc.

**OPINION**

---

[1] Tenn. Code Ann. § 47-18-101, *et seq.* (2001 & Supp. 2002).

[2] Oral argument was heard in this case on November 15, 2002, at Knoxville Fulton High School, as part of the Court's C.A.S.E. (**C**ourt of Appeals **A**ffecting **S**tudent **E**ducation) project.

I.

In December, 1999, the purchasers began shopping for a new vehicle. They found a 2000 model Ford Expedition at the seller's place of business and entered into negotiations with the seller. As they were unable to agree on a price, the purchasers prepared to leave the seller's place of business. At that time, the salesperson with whom the purchasers were negotiating mentioned that he had one 1999 model Ford Expedition, not previously owned, left on the lot. The purchasers went with the salesperson to examine this vehicle, and they were pleased with what they saw. The purchasers then bought this vehicle from the seller.

Shortly after purchasing the 1999 Ford Expedition, the purchasers took a trip to Alabama to visit friends. While unloading some of their belongings, one of their friends noticed some masking tape on the roof of the vehicle.[3] Upon further inspection, the purchasers realized that at least part of the vehicle had been repainted. After returning home, the purchasers examined the vehicle more closely and noticed more extensive damage to the vehicle.

The purchasers called the seller and informed it of their discovery. At the seller's request, the purchasers returned to the seller's place of business with the vehicle. The seller's general manager examined the Expedition and informed the purchasers that the vehicle had been "scratched" in transit to the seller. The purchasers then demanded to see the invoice for the repairs to the vehicle. This invoice revealed that the vehicle had been repaired due to "collision damage." At this time, the seller offered to have the vehicle repaired at a body shop of the purchasers' choosing. In addition, the seller offered the purchasers an extended warranty. However, at the time the offer was made, no monetary value was placed on it.

The purchasers then had the vehicle independently evaluated. This evaluation exposed even more extensive damage. The purchasers sued the seller under the Tennessee Consumer Protection Act ("the Act"), claiming that the seller had engaged in intentionally deceptive acts by misrepresenting the value of the vehicle and by failing to disclose the damage to the vehicle.

At trial, the testimony of the plaintiff, Mrs. Killingsworth, and the purchasers' expert witness revealed that the difference between the price the purchasers paid for what they thought was a new, undamaged vehicle, and the worth of the vehicle after repairs, was between $5,000 and $7,000. The seller's general manager testified that there was no difference in value between what the purchasers paid for the vehicle and the value of the repaired vehicle. The general manager also testified that the cost to a customer of the extended warranty offered to the purchasers was approximately $2,000. At the conclusion of the trial, the jury found that the seller had violated the Act, but that the seller's violation was not knowing and willful, and that the seller did not intentionally misrepresent the value

_____

[3] At trial, the purchasers testified that when they examined the vehicle at the seller's place of business, they were not tall enough to see the roof of the vehicle, which is 6'3" in height. However, the plaintiff, Mrs. Killingsworth, testified that her friend in Alabama was 6'4" tall, was wearing thick boots, and was standing on a concrete elevation, which enabled him to see the roof of the vehicle and notice the masking tape.

of the vehicle. The jury awarded the purchasers $2,500 in damages, but declined to award any punitive damages.

Subsequently, the purchasers moved the court to award attorney's fees and discretionary costs. The requested attorney's fees amounted to approximately $9,718, and the discretionary costs requested by the purchasers equaled approximately $1,864, for a total of $11,582. The seller opposed the award of any fees and costs, asserting, *inter alia*, that, as the purchasers did not specifically request attorney's fees and costs in their complaint, they could not recover fees and costs. The court then awarded the purchasers $500 in attorney's fees and costs.

At a hearing on the purchasers' motion to alter or amend, the trial court made the following statements:

> This case came on to be tried. The jury did what it saw as justice in this case, and the Court approved the jury verdict and approves that. What the jury did in this case, is found that the [purchasers were] overreaching, gave the cash equivalent of what the [seller] had offered long before the – well, not long, early on in the process.
>
> And so, trying to do justice and be fair, the Court did not award a full fee in this case, because the [purchasers] could have taken the offer that the [seller] made, which this jury ended up, found was fair. The Court found that the [seller], in this case, made an offer, which partially – the reason why I did award some fees in this case, because the [seller], in this case, never offered cash money. They offered – they said, We'll provide extended insurance and so forth and so on, which is not a – had they offered cash money, I doubt that I would have awarded anything in discretionary cost [sic] or attorneys' fees, considering the facts of the case and what the jury and the Court find to be justice in this case.
>
> So, I did not intend to award full fees for those reasons, and I am not saying that the fee was not earned. But the [purchasers] could have accepted what the jury found to be a fair offer long before a lot of these were ever incurred and that's why I did what I did.
>
> So, the Motion to Alter is overruled.

From this order, the purchasers appeal.

II.

Before addressing the parties' issues relating to attorney's fees and costs, we will address the seller's motion to strike the purchasers' second reply brief.

As the appellants in this case, the purchasers filed their initial brief, asserting as their only issue that the trial court abused its discretion in limiting the amount of the purchasers' fees and costs to $500. The seller, as the appellee, then filed a brief in response to the purchasers' issue on appeal and raised the additional issue that the purchasers are not entitled to any fees and costs. The purchasers then filed a reply brief, in which they addressed both their own issue and the issue raised by the seller. Subsequently, the seller filed a reply brief pursuant to Tenn. R. App. P. 27(c), which provides as follows:

> The appellant may file a brief in reply to the brief of the appellee. If the appellee also is requesting relief from the judgment, the appellee may file a brief in reply to the response of the appellant to the issues presented by appellee's request for relief.

Thereafter, the purchasers filed a second reply brief. The propriety of the filing of this latter brief is now challenged on this appeal.

In a situation such as this, where both parties raise issues requesting relief from the judgment of the trial court, both parties are entitled to file reply briefs, provided that in the appellant's reply brief, the appellant responds to the issues raised by the appellee. This allows the party who has raised a given issue to have the final word on that issue. However, neither Tenn. R. App. P. 27(c) nor any other rule of this court allows the appellant to file a second reply brief. Accordingly, we find and hold that the purchasers' second reply brief should be stricken from the record. It will not be considered by us.

III.

The seller argues that, as the purchasers did not specifically request an award of attorney's fees and costs in their complaint, they are not entitled to such relief. Essentially, the seller asserts that the judgment in this case is beyond the scope of the pleadings. The seller asks this court to reverse the trial court's award to the purchasers of $500.

The purchasers, in their complaint, specifically claim that the seller "violated the Tennessee Consumer Protection Act, [Tenn. Code Ann.] § 47-18-101, *et seq.*" The Act provides that, once a trial court finds there has been a violation of the Act, the court may award the plaintiff "reasonable attorney's fees and costs." Tenn. Code Ann. § 47-18-109(e)(1) (2001). The Tennessee Supreme Court has held that "in determining whether or not a judgment is beyond the scope of the pleadings, those pleadings must be given a liberal construction with all reasonable intendments taken in favor of the judgment." **Brown v. Brown**, 198 Tenn. 600, 611, 281 S.W.2d 492, 497 (1955) (citing **Myers**

***v. Wolf***, 162 Tenn. 42, 50, 34 S.W.2d 201, 203 (1931)). Given that we must liberally construe the complaint in the instant case and take "all reasonable intendments" in favor of the trial court's judgment, we conclude that the seller was effectively put on notice that the purchasers were seeking all relief authorized under the Act, including attorney's fees and costs. Accordingly, we find the seller's argument on this point to be without merit.

IV.

Having found that the failure to specifically plead attorney's fees and costs in their complaint is not fatal to the purchasers' recovery of such items, we turn now to the issue of whether the trial court abused its discretion in awarding the purchasers only $500.

We begin our analysis by noting that a determination of reasonable attorney's fees and costs is necessarily a discretionary inquiry. ***United Med. Corp. of Tenn. v. Hohenwald Bank & Trust Co.***, 703 S.W.2d 133, 137 (Tenn. 1986); ***Sanders v. Gray***, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998); *see also* Tenn. R. Civ. P. 54.04(2). There is no fixed mathematical rule in this jurisdiction for determining reasonable fees and costs. This being the case, an appellate court will normally defer to a trial court's award of attorney's fees unless there is "a showing of an abuse of [the trial court's] discretion." ***Threadgill v. Threadgill***, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987); *see also* ***Sanders***, 989 S.W.2d at 345. In evaluating the lower court's exercise of its discretion in a non-jury setting, we review its award *de novo*. We are not authorized to disturb the trial court's award unless we find that the evidence preponderates against the trial court's factual findings. Tenn. R. App. P. 13(d).

In this state, the establishment of a reasonable attorney's fee is determined in accordance with Tennessee Code of Professional Responsibility DR 2-106 (2002), which is a part of Tenn. Sup. Ct. R. 8. DR 2-106 provides, in pertinent part, as follows:

> (B) ... Factors to be considered as guides in determining the reasonableness of a fee include the following:
>
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar legal services.
>
> (4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

With respect to the final factor, our Supreme Court has opined that "[a]n attorney's fee should be greater where it is contingent than where it is fixed." *United Med.*, 703 S.W.2d at 136.

After applying the DR 2-106 factors to cases involving attorney's fees, the courts of this state have been faced with the issue of whether an award of fees and costs should be proportionate to an award of compensatory damages. In *Adkinson v. Harpeth Ford-Mercury, Inc.*, App. No. 01-A-01-9009-CH-00332, 1991 Tenn. App. LEXIS 114 (Tenn. Ct. App. M.S., filed February 15, 1991), a jury found that the defendant car dealership had violated the Act, and the jury awarded the plaintiff damages of approximately $8,555. *Id.* at *1. The trial court then awarded the plaintiff attorney's fees of $20,004 and expenses of approximately $2,886. *Id.* at *11. The defendant appealed, arguing, *inter alia*, that the trial court abused its discretion in awarding fees in an excessive amount. *Id.* at *21-*22.

In analyzing this issue, we relied on the United States Supreme Court case of *City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986). In *City of Riverside*, a civil rights action, the jury awarded the plaintiffs $33,350, and the District Court awarded the plaintiffs their full requested attorney's fee of approximately $245,000. *Id.* at 564-65, 106 S. Ct. at 2689. On appeal, the defendants argued that the fee award should be proportionate to the monetary award. *Id.* at 567, 106 S. Ct. at 2690. Rejecting that argument, the Supreme Court stated the following:

> A rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting § 1988. Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process.... These victims ordinarily cannot afford to purchase legal services at the rates set by the private market.

* * *

-6-

Moreover, the contingent fee arrangements that make legal services available to many victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries.

\* \* \*

A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*City of Riverside*, 477 U.S. at 576-78, 106 S. Ct. at 2695-96.

Affirming the trial court's award of attorney's fees in *Adkinson*, we opined as follows:

While the instant case does not involve a civil rights action, it does involve the Tennessee Consumer Protection Act, ... and we are of the opinion that that reasoning is applicable.... The potential award of attorney's fees under the Tennessee Consumer Protection Act is intended to make prosecution of such claims economically viable to plaintiff.

*Adkinson*, 1991 Tenn. App. LEXIS 114, at \*24-\*25.

In *Lowe v. Johnson County*, C/A No. 03A01-9309-CH-00321, 1995 Tenn. App. LEXIS 320 (Tenn. Ct. App. E.S., filed May 19, 1995), a Tennessee Human Rights Act case, the jury awarded the plaintiff $25,000 in damages, but the trial court awarded only $12,000 of the requested $96,000 in attorney's fees and costs. *Id.* at \*3. The plaintiff appealed the award of fees and costs, arguing that it was unreasonably low. *Id.* at \*1. Again relying on the guidance of *City of Riverside*, we found that "[i]n view of the relationship between the THRA and the federal civil rights acts, we believe the comments of the Supreme Court on these points are persuasive support for our fee and expense award in this case." *Lowe*, 1995 Tenn. App. LEXIS 320, at \*25. Finding that the trial court abused its discretion in awarding only $12,000 in fees and costs, this court awarded attorney's fees of $59,017 and paralegal expenses of $1,918, and stated the following:

> We recognize that we are awarding, as fees and expenses, more than twice the amount of the jury award; but this fact does not deter us. We agree with the United States Supreme Court that a rule limiting an attorney's fee to a proportion of the damages awarded would seriously undermine the purpose behind civil rights enactments.... Fee awards must fully and reasonably compensate plaintiff's counsel if the purpose and intent of the THRA is to be fulfilled.

*Id.* at *25-*26 (footnote omitted). *See also Patton v. McHone*, App. No. 01-A-01-9207-CH-00286, 1993 Tenn. App. LEXIS 212, at *18-*19 (Tenn. Ct. App. M.S., filed March 24, 1993) (holding that an award of attorney's fees and expenses, in a claim under the Magnuson-Moss Act, that are "some five times the amount of compensatory damages does not affect the validity of plaintiff's claim for reasonable attorney's fees").

In the instant case, there is nothing in the record before us to indicate that the trial court relied upon the factors set forth in DR 2-106 or the aforementioned case law in determining the reasonableness of the requested attorney's fees and expenses. The trial court's comments on the purchasers' motion to alter or amend reveal that the court considered the jury's award of $2,500 to be the cash equivalent of the seller's offer of repairs and an extended warranty. Based upon this rationale, the trial court decided that an award of the full amount of fees and expenses requested by the purchasers in this case would be unfair, because, according to the trial court's reasoning, the purchasers could have accepted the seller's offer and saved themselves from incurring over $11,000 in fees and expenses.

With respect to the award of damages to the purchasers, we find that the evidence preponderates against a finding that the jury's award was roughly equivalent to the offer made by the seller prior to trial. In this case, the purchasers sought a cash settlement/award for the diminution in value caused by the damage that was hidden from them. The offer made pre-trial was not a cash offer for diminution in value, but rather one of repairs and an extended warranty. In effect, the seller offered a mechanism by which the purchasers could obtain free repairs while what they really wanted – and rightfully so – was to be compensated for the decrease in value between that of a new vehicle and one that had been damaged and repaired. Moreover, it is clear from the record that the seller did not advise the purchasers of the cash value of its offer. The first time the purchasers learned of the alleged value of the extended warranty was at trial, when the seller's general manager testified that the cost of the warranty to a customer would be "somewhere in the ... $2,000 neighborhood, or maybe slightly under that."

We conclude that the factual predicate upon which the trial court made its determination regarding fees and expenses was in error. We therefore remand this case to the trial court for a determination of whether the claimed services of the purchasers' counsel were actually performed; whether the work was necessary; and whether the claimed rates were reasonable; and then to set the fee based upon those determinations under the guidance of the factors set forth in DR 2-106.

V.

The judgment of the trial court is vacated.  This case is remanded to the trial court for further proceedings.  Costs on appeal are taxed to the appellee, Ted Russell Ford, Inc.


_____
CHARLES D. SUSANO, JR., JUDGE