IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 19, 2013 Session

IN RE:  ESTATE OF ROBERT LEE ABBOTT

**Appeal from the Probate Court for Franklin County**
**No. P110014     Thomas C. Faris, Judge**

---

**No. M2013-00157-COA-R3-CV - Filed December 18, 2013**

---

Residuary legatees appeal from the trial court's denial of their motion to disallow compensation for executrix and estate's attorney.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Ben Erwin Bennett, Murfreesboro, Tennessee, for the appellants, C. Layne Grimes and Robert A. Tucker.

Clinton H. Swafford, Winchester, Tennessee, for the appellee, Estate of Robert Lee Abbott.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

This appeal challenges an $18,000 executrix fee and a $20,000 attorney fee for the administration of an estate.

Robert Lee Abbott ("decedent") died testate on February 3, 2011.  In accordance with the Decedent's will[1] and by order entered March 8, 2011, the court appointed Donna Willis ("Ms. Willis"), the decedent's late wife's niece, as executrix of the estate.  The will directs

---

[1] There are two wills dated January 9, 2006 and July 18, 2006.  The court admitted the earlier will to probate by order entered March 8, 2011 but admitted and substituted the later will by order entered July 12, 2011.

that Ms. Willis "be excused from making an inventory or accounting regarding the assets of [the] estate,"[2] and includes Ms. Willis, Robert (Bob) Abbott Tucker, and C. Layne Grimes (collectively referred to as the "the appellants") as residuary legatees of the decedent's estate. The appellants are the decedent's nephews.

Before seeking the probate court's approval, Ms. Willis issued two checks dated November 28, 2011: one for $20,000 to the estate's attorney, Mr. Clinton Swafford, and another for an executrix fee of $31,000 to herself. On March 16, 2012, the appellants moved to compel Ms. Willis to produce an inventory and accounting of the estate's assets. Ms. Willis complied. The appellants then moved the court for an order disallowing the fees paid to Ms. Willis and to the estate's attorney and further requested to remove Ms. Willis as executrix. The trial court heard these matters on August 14, 2012. By order entered August 29, 2012, the court reviewed the proof adduced at the hearing,[3] declared that the $20,000 fee paid to the attorney was reasonable in light of the estate's size and Tennessee Supreme Court Rule 8, Rule of Professional Conduct ("RPC") 1.5(a)(1)-(10), and set Ms. Willis's executrix fee at $18,000. The court further found "that both the Executrix and the attorney dealt in good faith with all Estate beneficiaries, with good results" and declined to remove Ms. Willis as executrix.

The appellants appeal from the November 15, 2012 final order denying their motion to alter or amend.

ANALYSIS

I. Executrix Fee

The appellants allege that Ms. Willis failed to act "with the diligence, faithfulness, and candor[4] required of [her] position," take issue with the fact that she did not keep an accounting of the time spent on estate matters, and argue that, consequently, she "is due no compensation whatsoever."[5]

_____

[2] Tennessee Code Annotated section 30-2-601(a)(1) provides that a decedent's will may waive the accounting requirement.

[3] We will discuss the testimony in further detail below as relevant to the issues on appeal.

[4] By his testimony, however, Mr. Tucker conceded that Ms. Willis never refused to share information with him.

[5] At the hearing, Mr. Tucker testified that, based on his perception of the time and trouble she incurred, a fee between $3,000 and $7,000 would constitute fair compensation for Ms. Willis. Mr. Grimes
(continued...)

The general rule, as the appellants concede, is that executors are entitled to reasonable compensation for their services and to payment for reasonable expenses incurred in good faith for the necessary benefit of the estate. *In Re Estate of Wallace*, 829 S.W.2d 696, 700-01 (Tenn. Ct. App. 1992); *see* Tenn. Code Ann. §§ 30-2-317, -606. The determination of reasonableness is left, in the first instance, to the trial court's sound discretion, and it is to make that determination in light of all the relevant circumstances. *Id.* at 701; *In Re Estate of Griffith*, 452 S.W.2d 895, 902 (Tenn. Ct. App. 1969). These circumstances include "the extent of the executor's responsibilities, the nature of the services rendered, the promptness and adequacy of the services, and the value of the benefits conferred." *Wallace*, 829 S.W.2d at 701. Thus, where the will is silent regarding compensation for an executor, "the executors shall be credited with a reasonable compensation" as determined by the court. *In Re Estate of Perlberg*, 694 S.W.2d 304, 307 (Tenn. Ct. App. 1984) (quoting *Leach v. Cowan*, 140 S.W.1070, 1074 (Tenn. 1911)).

The evidence adduced at the hearing in which Ms. Willis, the appellants, and the estate's accountant testified indicates that, although she did not keep a formal record of the time spent doing so, Ms. Willis performed the services necessary and proper to administer a large estate which included annuities, real property, stocks and bonds, a rental home, farm equipment, and a farming operation with a tenant. As the trial court found, Ms. Willis "did the 'leg work' for the entire estate" and consulted with various professionals to ensure that this work was performed correctly and beneficially to the estate.

For example, after handling the decedent's funeral expenses and spending many hours to set up the estate's bank account, Ms. Willis worked alongside the decedent's longtime attorney and accountant. According to the accountant, Ms. Willis was "very co-operative" during the "several" telephone calls and meetings between them and would promptly respond to his requests for bank records and other documents required to file the Tennessee inheritance tax return. The accountant also discussed the tax strategies he employed after consulting with Ms. Willis and the appellants and stated that the tax filings saved the estate approximately $35,000. The trial court found that Ms. Willis's use of the accountant's services yielded "a good result as to estate taxes." Additionally, Ms. Willis sought advice from the decedent's local stockbroker, Davis Mason, while managing the stocks, investments, and annuities so that she could issue checks to five individuals to whom the decedent bequeathed $50,000 each.

In addition to handling the estate's financial matters, Ms. Willis oversaw the farming operation and acted as landlord for the tenant who occupied the house on the farm. She also

---

[5](...continued)
testified that, as to fees, he did not know what to expect or look for.

-3-

met with the appellants on several occasions to discuss the personal and real property. Mr. Grimes testified that he did not object to Ms. Willis paying Kurt Johnson to survey the real estate and the court found that Mr. Johnson's services yielded a good result. Mr. Tucker recounted the auction of the decedent's personal property which Ms. Willis arranged with auctioneer Bill Anderton:

Q. Did you attend the auction?

A. Yes.

Q. Did you feel like that it was well handled?

A. Oh, yes. Yeah.

Q. Did you ever in your life see that big of a crowd at an auction sale?

A. No, sir. No, sir.

Q. Pastures full of pickup trucks, weren't there?

A. Yeah.

Q. And the bidding was long and drawn out.

A. Uh-huh.

Q. Were you satisfied with the results?

A. Yes, sir.

Q. And you sold farm equipment and furniture and things out of the house, did you not?

A. Yes.

In sum, the evidence clearly shows that Ms. Willis rendered useful services for the estate for which she is entitled to fair compensation. While she could not state exactly how much time she expended fulfilling her role as executrix, she stated that "it seemed like a lot." We concur in the court's specific finding that Ms. Willis met with the estate's accountant and attorney "many more times than what she stated on her cross examination."

As to the manner in which she carried out her duties, we also concur in the trial court's finding that, throughout the administration of the estate, Ms. Willis's actions "were in good faith, though perhaps mistaken at times." In particular, Ms. Willis issued from estate funds three checks totaling $7,730 to satisfy payments owed to a construction company for repairs on the dwelling. Ms. Willis explained that she understood that she had a duty to maintain the estate's property, but the accountant advised her that because the decedent devised the dwelling to her, she should have personally paid for those repairs. Accordingly, Ms. Willis promptly reimbursed the estate for more than she spent on the home repairs. Ms. Willis's cross-examination testimony about certain utility bills that she paid from estate funds for the dwelling devised to her "tended to point out that not every single check was for estate usage," as the trial court found, and the court's reduction of her fee to $18,000 remedied these matters.

Regarding her original $31,000 executrix fee, Ms. Willis testified that she did not request this amount, but that she and the estate's attorney and accountant "just all three agreed" on it. One of the many facts the trial court considered in setting Ms. Willis's fee at $18,000 was her peak yearly salary of $42,000 that she earned before retiring as an educator. The court's calculations were as follows:

> [$42,000 yearly] equates to $3,500 per month. Divided by 4.25 weeks, a weekly salary would be $823.52. Divided by a forty-hour workweek, her hourly work rate would be approximately $20.58. The Court finds a reasonable hourly rate for Mrs. Willis to be $20.00 per hour, which is less than what was applied in the <u>Wallace</u> case.

> Although [an $18,000 fee] would require 900 hours, that equates to 37.50 days, and the Court certainly feels that Mrs. Willis spent well over 40 days in dealing with this Estate. The Court finds it is not totally bound by an hourly rate, considering the size of the Estate[6] and the results obtained by Mrs. Willis. The Court specifically again finds that she dealt in good faith, although the treatment of some checks leaves something to be desired.

Overall, Ms. Willis promptly and faithfully discharged her duties as executrix and the services she provided were reasonable, appropriate, and inured to the estate's benefit. Based on the record before us, we conclude that an $18,000 fee to Ms. Willis does not exceed reasonable limits and we decline to second-guess the trial court's calculation of the amount Ms. Willis deserves under all the circumstances of this particular case. We, therefore, affirm.

---

[6] The Tennessee inheritance tax return which was entered as a trial exhibit values the taxable estate at $2,578,370.

## II. Attorney Fees

The estate's attorney, Mr. Clinton Swafford, charged a $20,000 flat fee for his services rendered during the administration of the estate. The appellants argue that Mr. Swafford's fee is excessive and not supported by any document evidencing the time expended and ask this Court to either disallow it or set a reasonable fee.

We review a trial court's determination regarding the reasonableness of an attorney fee for an abuse of discretion. A trial court's determination on the reasonableness of fees is "a subjective judgment based on evidence and the experience of the trier of facts" and there is "no fixed mathematical rule" for determining what a reasonable fee is. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (quoting *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 137 (Tenn. 1986); *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002)). "'[U]ltimately the reasonableness of the fee must depend upon the particular circumstances of the individual case.'" *Id*. at 176 (quoting *White v. McBride*, 937 S.W.2d 796, 800 (Tenn. 1996)).[7] Under the abuse of discretion standard, a reviewing court cannot substitute its judgment for the trial court's judgment. *Id*. Rather, a reviewing court will find an abuse of discretion only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

Executors have the authority to retain counsel to assist them in administering an estate, however, they are personally liable for the attorney fees until a court determines that the services were required and that the fee was reasonable. *Wallace*, 829 S.W.2d at 703. Among claims chargeable against an estate, costs of administration and "reasonable compensation to the personal representative and the personal representative's counsel" take first priority. Tenn. Code Ann. § 30-2-317(a). If a court approves the fee, the executor may charge it back against the estate as one of the costs of administration under Tenn. Code Ann. § 30-2-606. *Wallace*, 829 S.W.2d at 703 (citing *State ex rel. Dahlberg v. Am. Sur. Co.*, 121 S.W.2d 546, 547 (Tenn. 1938); *Perlberg v. Jahn*, 773 S.W.2d 925, 926-27 (Tenn. Ct. App. 1989)). An attorney who has assisted an executor who has propounded a will in good faith is entitled to reasonable fees and expenses against the estate. *See Love v. Cave*, 622 S.W.2d 52, 57 (Tenn. Ct. App. 1981).

---

[7]Although *Wright* specifically addressed attorney fees in cases involving minors, the Court emphasized that the rules governing reasonable attorney fees apply equally to cases involving adults. *See Wright*, 337 S.W.3d at 177.

In determining Mr. Swafford's reasonable flat fee, the trial court expressly considered the RPC 1.5(a) factors[8] as set forth in *Wright* and individually weighed the facts gleaned from the testimony presented in this case. As to factors (6) and (7), Mr. Swafford has practiced law in Franklin County for over half a century, is a past president of the Tennessee Trial Lawyers Association, was the decedent's longtime attorney, and served as the attorney for the decedent's late wife's estate. Ms. Willis testified that, after the decedent passed, she engaged Mr. Swafford to represent his estate and recounted their agreement about legal fees:

Q. Did you have a discussion with Mr. Swafford regarding his fees?

A. Not then, but we did later.

Q. When was later?

---

[8] RPC 1.5(a) provides that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses," and lists the following non-exclusive factors to consider in determining the reasonableness of a fee:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;

(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) whether the fee agreement is in writing.

Each factor may not be relevant in every case. *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a), cmt. 1.

A. Well, it was – We were talking about fees. And instead of trying to – I said, "What would be the flat fee to just cover the whole estate, to see it all the way through and me not have to pay any more money?" And he said 20,000, and I thought that was reasonable.

Q. And when did he quote you that fee, ma'am?

A. December of 2011.

As to the time and labor involved, Mr. Swafford met with Ms. Willis many times, and we concur in the trial court's finding that he "was involved in extensive contact with the Executrix, and arguably in coordinating matters was more involved than the accountant . . . .["9] Also, per Ms. Willis's instructions, Mr. Swafford prepared three deeds conveying the real estate to the devisees named in the will and met with the accountant, the appellants, and Ms. Willis. Working together, Mr. Swafford and Ms. Willis coordinated all of the details underlying the timely and favorable administration of a large estate. We concur in the trial court's finding that "[t]he results obtained by the Estate were good results.[10] All of the lesser beneficiaries were paid their dollar amounts, distributions were made to the main beneficiaries, deeds were drawn to facilitate matters, and Mr. Swafford remained in constant contact with the Executrix."

Having studied the record, we conclude that Mr. Swafford's services were necessary and beneficial to this estate and that the trial court did not abuse its discretion in awarding $20,000 as reasonable compensation for such services. We, therefore, affirm.

CONCLUSION

We affirm the trial court's order in its entirety. Costs of appeal are assessed against the appellants, C. Layne Grimes and Robert Abbott Tucker, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[9] We note, for reference, that the parties testified that they were pleased with the accountant's services and did not dispute his $9,845 fee.

[10] On cross-examination, Mr. Tucker candidly stated that he thought Mr. Swafford "did a good job."