# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 15, 2015 Session

## ROBERT McCOLLUM, ET AL. v. DARRELL PETERS

### Appeal from the Circuit Court for Washington County
#### No. 31032   Thomas J. Seeley, Jr., Judge

---

### No. E2014-02082-COA-R3-CV – Filed July 23, 2015

---

Robert and Kimberly McCollum (Plaintiffs) sued Darrell Peters (Defendant) for damages incurred after a garage he built partially collapsed. Their complaint alleged multiple claims for relief including breach of contract, violations of the Tennessee Consumer Protection Act (the TCPA), various forms of fraud and/or intentional misrepresentation and negligence. Following a bench trial, the court ruled in favor of the Plaintiffs. The court held that, with respect to his construction of the garage, Defendant was guilty of promissory fraud, made fraudulent misrepresentations in violation of the TCPA, and acted recklessly by consciously acting contrary to his representations. The trial court entered judgment awarding Plaintiffs a sum total of $56,103.50 including compensatory damages, punitive damages, and attorney's fees. Defendant appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded for Further Proceedings

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Thomas A. Peters, Kingsport, Tennessee, for the appellant, Darrell Peters.

Jason S. Shade, Johnson City, Tennessee, for the appellees, Robert McCollum and Kimberly McCollum.

## OPINION

### I.

Plaintiffs filed suit against Defendant on November 9, 2012, followed by an amended complaint in January 2013. Their amended complaint alleges, in part, as follows:

[P]rior to January 22, 2008, Plaintiffs and the Defendant entered into extensive negotiations with respect to the construction of a detached, three car garage . . . located at the Plaintiffs' residence. . . . During these conversations, Defendant represented to the Plaintiffs that he was insured and that he had a valid contractor's license for the state of Tennessee.

As a result of these assurances, Plaintiffs and the Defendant entered into a contract on or about January 22, 2008, for the construction of a detached, 24' x 36' three car garage at the Plaintiffs' Residence. . . .

Among other things, the Contract stated and the Defendant represented that the Garage would be constructed with a (1) "4" concrete floor with 6" x 6" wire mesh or fiber" and (2) "12" block below ground level with concrete and steel." In addition, the Contract stated that the Defendant would . . . furnish materials and labor to complete the construction of the Garage for a price of $21,194.00.

Throughout the Winter and Spring of 2008, Defendant worked on the Garage. During the construction, and given the representations of the Defendant, Plaintiffs were under the impression that the Garage was being built and constructed pursuant to the specifications of the Contract. As a result, Plaintiffs paid the Defendant $21,194.00 for the construction that they thought Defendant had performed.

On or about July 22, 2012, the rear masonry wall of the structure failed and collapsed into the Garage which resulted in a considerable amount of damage to the Garage as well as the Plaintiffs' personal property including, but not limited to, three vehicles, tools and a motorcycle.

Subsequent to the collapse of the rear masonry wall, Plaintiffs discovered that the Garage was not constructed in a workmanlike manner and was not constructed pursuant to [] either the specifications enumerated in the Contract or the representation made by the Defendant. Among other things,

it was discovered that the Garage: (1) was *not* constructed with a "4" concrete floor with 6" x 6" wire mesh or fiber," (2) was *not* constructed with "12" block below ground level with concrete and steel," and (3) was incorrectly constructed with the drain pipe resting above the footers with no gravel around it. As a result of such construction, the masonry wall collapsed given that it could not withstand the lateral earth pressure exerted by the retained soil.

In addition, and subsequent to the collapse of the rear masonry wall, Plaintiffs discovered that Defendant was not a licensed Tennessee contractor as was represented prior to and during the construction of the Garage.

In his answer, Defendant generally denied Plaintiff's allegations. He asserted that Plaintiffs' complaint was barred by the statute of repose, *see* Tenn. Code Ann. § 28-3-202 (2000), and should be dismissed. Further, Defendant denied "that the garage was not constructed in workmanlike manner in accordance to the contract," and denied that he "does not have a license from the State of Tennessee." As to the parties' contract, Defendant asserted that it "speaks for itself." Lastly, Defendant averred that the garage was built on Plaintiffs' property, with all work and materials visible to them during construction.

After a hearing, the trial court denied Defendant's motion to dismiss. In February 2014, the case was mediated, but without success. In June 2014, after the first trial judge recused herself, Defendant filed a second motion to dismiss which again alleged that the cause of action was barred by the statute of repose. After a hearing before the new trial judge, the motion to dismiss was again denied.

Trial was held on July 17, 2014. In addition to Plaintiff Robert McCollum and Defendant, the court heard testimony from Harold Ioerger, an expert in the field of civil and geotechnical engineering, and Wayne Bailey, a licensed general contractor. Generally summarized, the proof shows that the parties contracted for the construction of a garage with reinforced concrete block. Defendant took the position, however, that such was neither requested by Plaintiffs nor required, so he instead used hollow blocks. After the back wall of the garage collapsed, Plaintiffs employed Mr. Bailey's company to demolish the existing structure and rebuild the garage. The garage was rebuilt to the original specifications at a cost of $35,700. Mr. Bailey used concrete and steel reinforced blocks, footers, and drainage. Mr. Bailey testified he "wouldn't even think about" building the garage, without using reinforced concrete blocks given the slope of the land and the influx of water at the site.

3

In its September 14, 2014 final judgment and order, the trial court found that the underlying facts were as stated in the complaint. In support of its ruling in favor of Plaintiffs, the trial court further found, in pertinent part, as follows:

> Defendant supplied false information to Plaintiffs in relation to the Contract and the construction of the garage. Specifically, Defendant intentionally misrepresented material facts with respect to the method of construction including that the Garage would be constructed with 12" block below ground level with concrete and steel. Defendant made a promise to the Plaintiffs that he was going to put concrete and steel in the rear masonry wall of the Garage which was a material matter in relation to the construction of the wall. At the time the representation was made, Defendant did not intend to perform his obligations as represented to the Plaintiffs and as enumerated in the Contract. In fact, at the time the garage wall was built, the Defendant merely was going to build the Garage comparable to all of his other garages and not reinforce the back wall. The Plaintiffs were unaware that Defendant did not intend to perform as promised. The Plaintiffs justifiably relied upon the Defendant's misrepresentations by executing the Contract and continuing a business relationship with the Defendant. The Plaintiffs were justified in relying on the promise and representations made by the Defendant and, as result of relying on the promise and representations, they sustained damages as set forth below.
>
> Defendant argues that the Court should dismiss the Amended Complaint filed against him due to the fact that Plaintiffs' Complaint is barred by the statute of repose enumerated in *Tenn. Code Ann.* § 28-3-202. Notwithstanding the language of [Section] 28-3-202, Plaintiffs can maintain a cause of action against the Defendant given the language contained in Tenn. Code Ann. § 28-3-205(b) . . . . In this instance, Defendant is guilty of promissory fraud in that he engaged in fraudulent conduct with respect to the construction of the Garage as set forth herein.

4

In addition, Defendant was not a licensed Tennessee contractor as was represented prior to and during the construction of the Garage. Although Defendant maintained a business license issued through Sullivan County[,] he did not possess a valid Tennessee contractor's license. As such, Defendant violated the [TCPA]. As a result of the aforementioned violations, Plaintiffs sustained damages as set forth below.

As a direct, proximate and forseeable result of the misrepresentations and the actions of the Defendant . . ., Plaintiffs[] sustained the following damages:

a. $25,006.00 for the removal and replacement of the Garage; and
b. $6,000.00 for the depreciation in value for the Porsche 928, Porsche 911 and Infinity automobiles.

In addition, pursuant to § 47-18-109(e)(1) of the [TCPA], Plaintiffs are entitled to receive their reasonable attorney's fees and costs in bringing this action in the amount of $15,097,50.

Finally, Plaintiffs are entitled to punitive damages in the amount of $10,000.00. The Court finds that there is clear and convincing evidence that Defendant acted recklessly with regard to the representations that were made in connection with the construction of the Garage. More specifically, Defendant was reckless in that he was aware of the representations that were made but consciously disregarded those representations and did not have the intent to do what was promised and represented to the Plaintiffs with respect to the method of construction of the Garage.

(Italics in original.) Consistent with its findings, the trial court awarded Plaintiffs a judgment in the total amount of $56,103.50, plus interest, and taxed costs of the action against Defendant. Defendant filed a timely notice of appeal.

5

## II.

As taken verbatim from his brief, Defendant raises the following issues for our review:

1. Whether the Trial Court erred in not considering lack of mitigation of their damages on the part of the Plaintiffs, in awarding Plaintiffs the sum of $25,006.00 in compensatory damages.

2. Whether the Trial Court erred in ruling the Defendant recklessly violated the [TCPA].

3. Whether the Trial Court erred in awarding the Plaintiffs $10,000.00 in punitive damages.

4. Whether the Trial Court erred in denying the Defendant's Motion to dismiss due to the Statute of Repose applicable in this Cause.

Plaintiffs raise the additional issue of whether they are entitled to an award of their reasonable attorney's fees incurred in defending this appeal.

## III.

Our review of this non-jury case is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings, a presumption we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.3d 716, 719 (Tenn. Ct. App. 1992). We review the trial court's conclusions of law de novo with no presumption of correctness. *Oakes v. Oakes*, 235 S.W.3d 152, 156 (Tenn. Ct. App. 2007).

## IV.

Defendant asserts that the trial court erred in failing to consider a lack of mitigation of damages on Plaintiffs' part in calculating the award of compensatory damages. Defendant contends that, despite experiencing water in the garage, Plaintiffs failed to take appropriate remedial action or to notify him of the problem. Defendant concludes that as a result of the lack of notice, he had "no opportunity to remedy the situation, and mitigate his and the Plaintiffs' damages."

"As a general rule, a party alleging defects in the performance of a contract is required to give notice and a reasonable opportunity to cure the defects." *Forrest Constr. Co., LLC v. Laughlin*, 337 S.W.3d 211, 229 (Tenn. Ct. App. 2009) (citing *Carter v. Krueger*, 916 S.W.2d 932, 935 (Tenn. Ct. App. 1995)). The defaulting party is thereby allowed the opportunity "'to repair the defective work, to reduce the damages, to avoid additional defective performance, and to promote the informal settlement of disputes.'" *Id*. (quoting *Custom Built Homes v. McNamara*, No. M2004-02703-COA-R3-CV, 2006 WL 3613583, at *6 (Tenn. Ct. App. Dec. 11, 2006) (quoting *Carter*, 916 S.W.2d at 935)). "There are, however, circumstances in which this duty to give notice and an opportunity to cure is excused." *Id*. In *Forrest Construction Company*, we further observed that the duty to mitigate includes a "reasonableness" standard. We stated:

> The critical factor in determining fulfillment of a plaintiff's duty to mitigate is whether the method which he employed to avoid consequential injury was reasonable under the circumstances existing at the time. The rule with respect to the mitigation of damages may not be invoked by a contract breaker "as a basis for hypercritical examination of the conduct of the injured party, or merely for the purpose of showing that the injured person might have taken steps which seemed wiser or would have been more advantageous to the defaulter." As stated in McCormack, Damages, Sec. 35 (1935), "a wide latitude of discretion must be allowed to the person who by another's wrong has been forced into a predicament where he is faced with a probability of injury or loss. Only the conduct of a reasonable man is required of him."

*Id*. at 230 (citing *Action Ads, Inc. v. William B. Tanner Co*., 592 S.W.2d 572 (Tenn. Ct. App. 1979) (quoting *Tampa Electric Co. v. Nashville Coal Co*., 214 F. Supp. 647, 652 (M.D. Tenn. 1963)).

In the present case, the proof showed that in addition to the garage construction, Plaintiffs had employed Defendant to do some additional work at their home such as installing new windows. Plaintiff Robert McCollum testified that after the garage was finished, there was still work to be done at the house and Plaintiffs owed Defendant $1,000 for the work he had already completed. The witness testified that Defendant never returned to complete the job or to collect payment and failed to respond to numerous attempts to reach him. According to Mr. McCollum, Plaintiffs simply "couldn't get a hold of him; called, e-mailed, nothing." Then, two to three months after the garage was finished, Plaintiffs noticed that water came into the back part of the

garage after a heavy rain. Again, Plaintiffs attempted to reach Defendant by phone, but he did not return their call. According to Mr. McCollum, "this was after we couldn't get him back to finish the other work or get him to respond to calls or emails." Mr. McCollum explained that after nearly two years, and after Plaintiffs had given up any hope of Defendant returning their messages, Mr. McCollum installed a sump pump himself to take the water out of the garage. He further testified that the "bubbling" water he saw was "mainly coming up through the floor." He said that he had no idea that the problem was related to the construction of the back wall. For his part, Defendant testified that he decided to forgo the money he was owed after he was unable to satisfy Plaintiffs regarding the new windows he installed. Defendant testified, "I figured the best thing I do is just forget it." He added, "I figured I couldn't win; I couldn't please them," but could not recall whether he ever informed Plaintiffs that he considered the job to be finished and would not return.

The proof shows that Plaintiffs attempted unsuccessfully to contact Defendant after observing water at the back of the garage. Ultimately, Plaintiffs believed they remedied the problem by installing a sump pump. At trial, the expert engineer testified to his opinion that the average person, upon discovering water accumulating in a garage, "would sump pump the sucker because that's cheaper." Notably, until the garage collapsed some four years later, Plaintiffs were under the impression that the garage was constructed with a reinforced wall as stated in the contract. In his brief, Defendant suggests that Plaintiffs should have taken other remedial action such as installing drainage to keep the water from entering the garage in the first place. At the same time, Defendant testified, consistently with Plaintiffs, that even though it was not written into the contract, the parties had discussed drainage prior to construction. Defendant testified, "I just told them that that's the way we normally done it, . . . lay a 12-block wall up and we put a drain around the back side of it." In our view, Plaintiffs acted reasonably under the circumstances, given their impressions regarding the incoming water and their understanding of the manner in which the garage had been constructed. In addition, Defendant failed to offer any proof to the contrary.

The evidence does not preponderate against the trial court's decision to award Plaintiffs damages without any adjustment for failure to mitigate damages. Therefore, we uphold the award of compensatory damages.

V.

Defendant challenges the trial court's finding that he violated the TCPA. He asserts that the evidence does not show, and the trial court did not find, that he acted intentionally or deceptively to provide substandard work, a finding he says the Act requires.

Regarding application of the TCPA, this Court has recently observed:

> The Tennessee Consumer Protection Act, Tennessee Code Annotated Sections 47-18-101, et seq. ("TCPA"), prohibits, among other things, "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). . . . A "deceptive" act or practice is "one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as a matter of fact." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005) (citations omitted). An act or practice may be deemed unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." *Id*. at 116-17 (citing 15 U.S.C. § 45(n)). Because the TCPA is remedial, courts have determined that it should be construed liberally in order to protect the consumer. *Id*. at 115. In order to recover under the TCPA, a plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act; and (2) that the defendant's conduct caused an "ascertainable loss of money or property. . . ." *Id*. (quoting Tenn. Code Ann. § 47-18-109(a)(1)); *see also* *Cloud Nine, L.L.C. v. Whaley*, 650 F.Supp.2d 789, 798 (E.D. Tenn. 2009) ("plaintiffs asserting claims under the [TCPA] are required to show that the defendant's wrongful conduct proximately caused their injury"). . . .
>
> Whether a particular representation or act is "unfair" or "deceptive," within the meaning of the TCPA, is a question of fact, *Id*. at 116 (citation omitted), which we review de novo upon the record with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Furthermore, when the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues.

***Borla Performance Indus. v. Universal Tool & Eng'g, Inc.,*** No. 2014-00192-COA-R3-CV, 2015 WL 3381293, at \*12-13 (Tenn. Ct. App. E.S., filed May 26, 2015) (*citing* ***Audio Visual Artistry v. Tanzer***, 403 S.W.3d 789, 809-10 (Tenn. Ct. App. 2012)).

In the present case, the trial court found that Defendant violated the TCPA by representing to Plaintiffs prior to and during construction of the garage that he had a Tennessee contractor's license. More specifically, the trial court found that the Defendant's "fraudulent misrepresentations constituted unfair, misleading and deceptive acts or practices" pursuant to Tenn. Code Ann. § 47-18-104(b) (21), -(35), and, "possibly," -(47) (Supp. 2014) and resulted in the Plaintiffs' sustained damages. En route to its ruling, the trial court found that intent was not an element required to establish a claim under the TCPA. As the trial court put it, "[i]f there's a violation of the provisions of the [TCPA], then it's a violation of the Act." The cited subsection of Section 47-18-104(b), as referenced by the trial court, are as follows:

> (b)   The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:
>
> \*     \*     \*
>
> (21) Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services;
>
> \*     \*     \*
>
> (35)   Representing that a person is a licensed contractor when such person has not been licensed as required by § 62-6-103 or § 62-6-502; or, acting in the capacity of a contractor as defined in § 62-6-102(4)(A), § 62-6-102(7) or § 62-6-501, and related rules and regulations of the state of Tennessee, or any similar statutes, rules and regulations of another state, while not licensed;

*   *   *

(47)  A home improvement services provider:
(A)  Entering into a contract for home improvement services without providing to the residential owner in written form:

(i)  That it is a criminal offense for the person entering into the contract for home improvement services with a residential owner to do any of the prohibited acts set out in § 39-14-154(b), by writing out the text of each prohibited act, and providing the penalty and available relief for such; and
(ii)  The true and correct name, physical address and telephone number of the home improvement services provider; or

(B)  Having complied with subdivision (b)(47)(A), failing to provide to the residential owner in written form a correct current or forwarding address if the person changes the physical address initially provided to the residential owner and any or all work to be performed under the contract has not been completed[.]

In arguing against the trial court's finding that he violated the TCPA, Defendant takes the position that he holds a business license issued by Sullivan County, and as such considers himself a "licensed contractor."  At trial, Defendant used the terms "business license" and "contractor's license" interchangeably and testified, "[i]f you ask me if I'm a licensed contractor to work in the state of Tennessee, yes."  On questioning by Plaintiffs' counsel, Defendant testified as follows:

Q:  So in your mind, it's okay to advertise that you're a licensed contractor and not explain the difference if somebody calls and specifically asks you that.  Yes or no?

A:  Yeah, its - - I done it a thousand times, so I don't see a problem.

The TCPA makes it unlawful to represent that goods or services are of a particular standard if they are another, or to engage "in any other act or practice which is deceptive to the consumer or to any other person." This Court has stated that a "deceptive act need not be knowing or intentional to be the basis for a TCPA claim," as follows:

11

The Tennessee Consumer Protection Act does not impose a single standard applicable to all cases for determining whether a particular act or practice is deceptive for the purpose of Tenn. Code Ann. § 47-18-104(b)(27). *To be considered deceptive, an act is not necessarily required to be knowing or intentional. Negligent misrepresentations may be found to be violations of the Act*. A deceptive act or practice is, in essence, "a material representation, practice or omission likely to mislead . . . reasonable consumer[s]" to their detriment.

***Signature Designs Group, LLC v. Ramko***, No. M2011-01086-COA-R3-CV, 2012 WL 2519037, at *14 (Tenn. Ct. App. 2012) (*quoting **Fayne v. Vincent***, 301 S.W.3d 162, 177 (Tenn. 2009)) (internal citations omitted; emphasis added).

Simply stated, Defendant misrepresented that he was a "licensed contractor," a term understood to mean that he was licensed pursuant to the provisions of Tenn. Code Ann. § 62-6-101, et seq. (2014), covering licensing requirements for general contractors, or § 62-6-501 (2014) covering licensing requirements for home improvement contractors. In fact, by Defendant's own testimony, the only license he has ever held is a county-issued business license. We therefore uphold the trial court's finding that Defendant thereby engaged in a deceptive act or practice in violation of the TCPA.

VI.

A.

Defendant challenges the trial court's award of $10,000 in punitive damages to Plaintiffs. In short, Defendant submits that the trial court did not find that he committed willful misconduct and, absent such a finding, no punitive damages should be allowed. Defendant further contends, without elaboration, that "under the circumstances," both punitive damages and attorney's fees should not be allowed.

B.

The trial court reasoned that punitive damages were justified in the present case as follows:

I am not going to award . . . treble damages in this case for this reason: I have serious reservations about whether or not [Defendant] actually intended to deceive. Apparently the

contract he uses, . . . he just doesn't follow his own contract. And, having said that, his testimony was that this is the way he builds all the garages. That may be correct and maybe he's not building a very good garage or retaining wall when he does that, but I don't think there's any malice . . . – it's close to recklessness.

[F]or punitive damages, I'm going to find recklessness. I think if you make a promise to somebody, and that's what a contract is, it's a promise, . . . and I don't think he had the intent to deceive them, but he certainly had the intent not to do what he promised to do. I think that's reckless behavior and I'm going to award $10,000.00 punitive damages.

The trial court thereby found that Defendant acted recklessly. In this state, it has been long-held that a court may award punitive damages "only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof & Co*., 833 S.W.2d 896 (Tenn. 1992). As relevant in this case, "[a] person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Id*. Moreover, "because punitive damages are to be awarded only in the most egregious of cases, a plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence." *Id*. Lastly, a trial court's award of punitive damages should be based on consideration of a list of factors to include the following:

(1) The defendant's financial affairs, financial condition, and net worth;

(2) The nature and reprehensibility of defendant's wrongdoing, for example

(A) The impact of defendant's conduct on the plaintiff, or

(B) The relationship of defendant to plaintiff;

(3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;

13

(4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;

(5) The expense plaintiff has borne in the attempt to recover the losses;

(6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;

(7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;

(8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and

(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

*Id*. at 901-02.

In this case, the trial court found that Defendant acted recklessly in making representations regarding the method of construction he would employ that he never intended to follow. There is no dispute that the Defendant prepared the contract between the parties for construction of the 24 x 36 garage. Among the specifications is a provision for "12[-inch] block below ground level with concrete and steel." Notwithstanding this specification for a reinforced wall, Defendant denied that he and Plaintiffs ever discussed the use of reinforced concrete at all. Defendant explained that he inserted the specification for reinforced concrete in the contract only because, initially, he believed the project was located in Sullivan County where the building code required "12-inch block with a one half-inch piece of steel every 6 foot. . . ." Because the garage was actually built in Washington County, he did not, in fact, insert rebar every six feet and pour concrete in the blocks as first contemplated. Defendant testified he never informed Plaintiffs of the change because, he insisted, they never asked for reinforced concrete. Defendant further disagreed with Plaintiff's expert witness that the structural integrity of the back wall would have been enhanced by the use of reinforced concrete.

We agree with the trial court's conclusion that despite what the parties' contract provided, Defendant always intended to build the Plaintiffs' garage to his customary standard and his understanding of what the county building code required, and no more. Defendant so testified, in relevant part, as follows:

> I have worked construction all my life. [. . . .] I know what a retaining wall is and how to build it properly, but . . . in residential construction, you know, I mean, this is the real world. [W]e aren't all talking about some big commercial company that, . . . I mean, yeah, I could do it on every garage if the people want to pay 50-, 60,000 bucks for a garage. I mean, we're building a garage for a residential person.

> \* \* \*

> I go by what I have done in the past 30 years, . . . that I have always done. . ., a 12-inch block 6 foot high, I mean – more than likely, 95 percent of the houses around here, you don't see people pumping 12-inch block. [. . . .] No dirt – no concrete in them; nobody does that. I mean, you have got to be within people's budget, and a 12-inch block, according to all the building county inspectors and everything else, is fine. . . .

On our review of the evidence, we conclude that there is clear and convincing evidence to support the trial court's award of punitive damages based on its finding of Defendant's "reckless behavior" in the construction of the garage. In particular, Defendant, in an apparent effort to keep costs down, misrepresented the method of construction he intended to and did utilize without notice to Plaintiffs, who relied on Defendant's assertions to their detriment. The award of $10,000 in punitive damages is affirmed.

## C.

As we earlier noted, the trial court awarded both punitive damages and attorney's fees to Plaintiffs. As to the latter award, the trial court held that "pursuant to § 47-18-109(e)(1) of the [TCPA], Plaintiffs are entitled to receive their reasonable attorney's fees and costs in bringing this action in the amount of $15,097.50." Defendant offers nothing in support of his position that Plaintiffs should not receive both awards "under the circumstances." Plaintiffs respond that the award of both punitive damages and attorney's

15

fees under the TCPA is not duplicative or otherwise improper given the differing purposes of the two types of awards. In short, we agree with Plaintiffs' position.

As noted by Plaintiffs, the Supreme Court has essentially resolved this issue in their favor. In *Miller v. United Automax*, 166 S.W.3d 692, 697 (Tenn. 2005), the Court held as follows:

> The Tennessee Consumer Protection Act provides that once a trial court finds that there has been a violation of the Act, the court may award the plaintiff "reasonable attorney's fees and costs." Tenn. Code Ann. § 47-18-109(e)(1) (1995). Unlike an award of treble damages under the Tennessee Consumer Protection Act, attorney's fees are not punitive in nature. "The potential award of attorney's fees under the Tennessee Consumer Protection Act is intended to make prosecution of such claims economically viable to plaintiff." *Killingsworth v. Ted Russell Ford, Inc*., 104 S.W.3d 530, 535 (Tenn. Ct. App. 2002) (citation omitted). On the other hand, punitive damages are designed to punish wrongful conduct and to deter others from such conduct in the future. *See Concrete Spaces*, 2 S.W.3d at 906-07. Because the purpose of the attorney's fees and costs provision is different from the purpose of punitive damages, an award of attorney's fees and costs under the Tennessee Consumer Protection Act is not duplicative of punitive damages.

In the present case, the evidence does not preponderate against the trial court's award of attorney's fees at the trial court level to Plaintiff. Accordingly, we uphold the award of $15,097.50 in attorney's fees.

VII.

Tenn. Code Ann. § 28-3-202 is the statute of limitations that governs actions based on defects to improvements in real property. The statute provides, in relevant part, that such action shall be brought "against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement." As earlier set forth, Defendant completed construction of the Plaintiffs' garage in April 2008, and Plaintiffs filed suit against Defendant in November 2012. At trial, Defendant renewed his motion to dismiss Plaintiffs' complaint as being time-barred. In denying the motion, the trial court found, in relevant part, as follows:

Notwithstanding the language of Tenn. Code Ann. § 28-3-202, Plaintiffs can maintain a cause of action against the Defendant given the language contained in Tenn. Code Ann. § 28-3-205(b) which provides, in relevant part, as follows:

> The limitation hereby provided shall not be available as a defense to any person who shall have been guilty of fraud in performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying, in connection with such an improvement, or to any person who shall wrongfully conceal any such cause of action.

In this instance, Defendant is guilty of promissory fraud in that he engaged in fraudulent conduct with respect to the construction of the Garage as set forth herein.

Defendant maintains that there was no evidence to support the trial court's finding of fraud in connection with Defendant's representations to Plaintiffs and his actual construction of their garage. Defendant concedes that if this Court disagrees with his position, and upholds the trial court's ruling, his argument that the statute of repose applies becomes moot.

Earlier in this opinion, we upheld the trial court's finding that Defendant "engaged in fraudulent conduct with respect to construction of the Garage. . . ." As a result, the exception for fraud contained in Section 28-3-205(b) applies in this case to remove the action from the four-year limitations period. Accordingly, the trial court properly denied Defendant's motion to dismiss.

## VIII.

Lastly, Plaintiffs have requested an award of the additional attorney's fees and costs they have incurred in defending this appeal. *See **Killingsworth v. Ted Russell Ford**,* 205 S.W.3d 406, 411 (Tenn. 2006) (providing that "a plaintiff seeking to recover reasonable attorney's fees generated during an appeal of a case brought under the TCPA must set forth his or her intention to do so in his or her appellate pleadings"). In ***Killingsworth***, the Supreme Court addressed awards of attorney's fees under the TCPA as follows:

17

Additionally, the TCPA allows an award of attorney's fees to a plaintiff only where the trial court has found that one of the Act's provisions "has been violated." Tenn. Code Ann. § 47-18-109(e)(1). If an appeal ensues, the wronged plaintiff's monetary judgment is at risk of being consumed by the resulting appellate attorney's fees unless they are also subject to being awarded. A plaintiff successful at trial is therefore at risk of being "de-remedied" if unable to collect his or her reasonable appellate legal fees. Given the broad remedial goals our legislature determined to pursue with the TCPA, we do not think the General Assembly intended that result. As this Court has previously recognized, a potential award of attorney's fees under the TCPA is intended to make the prosecution of such claims economically viable to a plaintiff. The same concern with economic viability applies equally to appellate attorney's fees.

205 S.W.3d at 410 (internal citations omitted.)  Consistent with the principles set forth in **Killingsworth**, we conclude that Plaintiffs should be awarded their reasonable attorney's fees incurred on this appeal.  Accordingly, on remand the trial court will hold a hearing to determine Plaintiffs' reasonable attorney's fees on appeal.

IX.

The judgment of the trial court is affirmed.  This case is remanded, pursuant to applicable law, for further proceedings as directed herein and for the collection of costs assessed below.  Costs on appeal are assessed against the appellant, Darrell Peters.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE